**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| EMILY DACK, KIM HENSLEY-HAUSER, MATTHEW DORTON, LARRY PIKE, TONY CARRILLO, CHRIS CATES, ROGER DOYLE, JACOB MILLER, SARAH NORRIS BARLOW, BRANDON BARLOW, CHAD RITTERBACH, JOHNATHAN JONES, MARK PULVER, and ASHLEY PULVER individually and on behalf of others similarly situated, | Civ. No.: _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, a/k/a VOLKSWAGEN OF AMERICA, INC; and VOLKSWAGEN, AG, a/k/a VOLKSWAGEN GROUP, a foreign corporation, | |
| Defendants. | |

Plaintiffs Emily Dack, Kim Hensley-Hauser, Matthew Dorton, Larry Pike, Tony Carrillo, Chris Cates, Roger Doyle, Jacob Miller, Sarah Norris Barlow, Brandon Barlow, Chad Ritterbach, Johnathan Jones, Mark Pulver and Ashley Pulver bring this action against Defendants Volkswagen Group of America, Inc., also d/b/a Volkswagen of America, Inc., and Volkswagen, AG, also d/b/a Volkswagen Group (collectively, "Defendant" or "Volkswagen"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of model years ("MY") 2015-2019 Volkswagen

Case 4:20-cv-00615-BCW   Document 1   Filed 08/04/20   Page 1 of 85

vehicles equipped with the Front Assist feature (the "Class Vehicles" or "Vehicles").[1]

2.     This action arises from Volkswagen's failure, despite its longstanding knowledge since at least October of 2017, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to a manufacturing defect (including software coding issues) in the Front Assist feature that causes the braking system to suddenly and unexpectedly engage without reason or driver input, resulting in potentially dangerous conditions ("the Front Assist Defect"). This unnecessary automatic braking results in sudden and unexpected slowing, sudden stopping and stalling events while the vehicle is being operated, as well as other dangerous situations for Class Vehicle occupants and others on the roadways.

3.     Volkswagen refers to this automatic braking feature as "Front Assist" or "Forward Collision Warning and Autonomous Emergency Braking," and touts that the "system can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."[2]

4.     Instead of making the Class Vehicles safer to operate, however, the Front Assist Defect actually makes them significantly more dangerous to operate – to both the Class Vehicles'

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.
[2] https://www.vw.com/models/atlas/section/technology/ (last visited Feb. 13, 2020); https://www.vw.com/content/dam/vwcom/brochures/2020/tiguan/VW_Tiguan_MY20_Brochure_v09.pdf (last visited Feb. 13, 2020).

CLASS ACTION COMPLAINT                    2

occupants and to drivers and pedestrians in the vicinity of the Class Vehicles – when the brakes are suddenly engaged by the vehicle without reason and without warning.

5.     When the Front Assist Defect engages suddenly and without warning, it can leave the driver stranded in dangerous traffic situations or with a vehicle that has suddenly stopped and will not move.

6.     Not only did Volkswagen actively conceal the fact that the Class Vehicles' defective Front Assist braking could result in sudden and unexpected slowing and stopping events and other dangerous situations (and require costly repairs to fix), it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

7.     Volkswagen has long been aware of the Front Assist Defect. Despite its longstanding knowledge, Volkswagen has been unable or unwilling to adequately repair the Class Vehicles when the Front Assist Defect manifests.

8.     Many owners and lessees of Class Vehicles have communicated with Defendants and their agents to request that Volkswagen remedy and/or address the Front Assist Defect at Defendants' expense. Defendants have failed and/or refused to do so – often conveying to Vehicle owners and lessees that the Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise.

9.     Despite notice and knowledge of the Front Assist Defect from the numerous consumer complaints it has received and that have been posted in public fora, as well as information received from Volkswagen dealerships, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, Volkswagen has not recalled the Class Vehicles to repair the Front Assist Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out-

CLASS ACTION COMPLAINT                    3

of-pocket expenses to repair the Front Assist Defect.

10.　　Further notice has been provided to VW by many of the Plaintiffs[3] in this action concerning the Front Assist Defect and the breaches by VW of both its express and implied warranties.  A letter outlining the Front Assist Defect and discussing the breaches of warranty by VW was sent on or about July 24, 2020 and was received by VW on or about July 27, 2020.

11.　　As a result of Volkswagen's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Volkswagen were conducted in a manner giving rise to substantial aggravating circumstances.

12.　　Had Plaintiffs and other Class members known about the Front Assist Defect at the time of purchase or lease of their vehicles, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

13.　　As a result of the Front Assist Defect, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Volkswagen's conduct.

14.　　Accordingly, Plaintiffs bring this action to redress Volkswagen's violations of state consumer protection laws, the federal Magnuson-Moss Warranty Act, state law breaches of express and implied warranties, and also to seek recovery for Defendants' unjust enrichment.

**JURISDICTION AND VENUE**

15.　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and

---

[3] The notice was sent on behalf of Plaintiffs Dack, Hensley-Hauser, Dorton, Pike, Carrillo, Cates, Doyle, Miller, the Barlows, Ritterbach, and Jones.

costs, and (iii) there is minimal diversity because plaintiffs and defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, two plaintiffs reside in this district, Volkswagen has advertised in this district, and Volkswagen has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district.

17.     This Court has personal jurisdiction over Volkswagen because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of Missouri and throughout the United States.

## THE PARTIES

### Plaintiff Emily Dack

18.     Emily Dack is a citizen of the state of Missouri and resides in Independence, Missouri.

19.     Ms. Dack owns a 2019 VW Atlas that she purchased new in December of 2019 from Bud Brown Volkswagen located in Olathe, Kansas.

20.     Prior to purchasing the vehicle, Ms. Dack reviewed the Monroney (window) sticker, reviewed some of Volkswagen's advertising, discussed the vehicle's features with Volkswagen sales representatives, and took the car for a test drive.

21.     The Front Assist Defect has stopped Plaintiff's vehicle at inappropriate and unsafe times.

22.     In one instance, during her morning commute the Front Assist activated while she

CLASS ACTION COMPLAINT                    5

was traveling at speed on Interstate 470. Ms. Dack was not close to any other cars or objects at the time, but the light on the dashboard flashed red, she heard a beeping sound, and the brakes activated.

23. If Ms. Dack had known of the Front Assist Defect, she would not have purchased her vehicle or would have paid less for it.

**Plaintiff Kim Hensley-Hauser**

24. Kim Hensley-Hauser is a citizen of the state of Missouri and resides in Lee's Summit, Missouri.

25. Ms. Hensley-Hauser owns a 2019 VW Atlas R-line that she purchased new in February of 2019 from Lees Summit VW in Lee's Summit, Missouri.

26. Prior to purchasing the vehicle, Ms. Hensley-Hauser reviewed the Monroney (window) sticker and discussed the vehicle's features with Volkswagen sales representatives.

27. The sales representatives stressed the vehicle's safety features and described the car as "one of the safest around." The safety of the car was one of the most important factors in Ms. Hensley-Hauser's decision to purchase the vehicle.

28. The Front Assist Defect has stopped Plaintiff's vehicle at inappropriate and unsafe times.

29. When Ms. Hensley-Hauser's wife was driving, the brakes activated came on the highway in downtown Kansas City, Missouri. She was traveling approximately fifty-five (55) miles per hour on northbound US Highway 40. As she approached a fork in the road for the onramp to westbound Interstate 70, the brakes came on abruptly. No vehicles were ahead of her at the time the brakes applied. The traffic behind her was able to slow or change lanes to avoid a collision.

30. If Ms. Hensley-Hauser had known of the Front Assist Defect, she would not have

purchased her vehicle or would have paid less for it.

**Plaintiffs Matthew Dorton and Larry Pike**

31.     Matthew Dorton and Larry Pike are citizens of the State of Florida and reside in Lakeland, Florida.

32.     Mr. Dorton and Mr. Pike own a 2019 Volkswagen Jetta that they purchased new in September 2019 from Brandon Volkswagen in Tampa, Florida.

33.     Prior to purchasing the vehicle, Mr. Dorton and Mr. Pike reviewed the Monroney (window) sticker and discussed the vehicle's features with Volkswagen sales representatives.

34.     On more than 10 occasions the Front Assist Defect stopped Plaintiffs' vehicle at inappropriate and unsafe times.

35.     In one instance, while driving on the highway at approximately 75 miles per hour, the vehicle beeped and the brakes engaged, reducing the speed to about 50 miles per hour.

36.     At other times, the vehicle applied the brakes inappropriately while crossing intersections when there was no obstruction in front of the vehicle.

37.     Plaintiffs' Front Assist also activated while driving at 3 a.m. down a straight road, again with no obstructions.

38.     The braking initiated by the Front Assist is so violent that the vehicle's rotors actually became warped from activation of the Front Assist.

39.     Conversely, the vehicle's Front Assist has failed to activate when obstructions were present.

40.     Plaintiffs presented the vehicle to a Volkswagen dealership to assess the problems with the Front Assist, but the dealership did not fix the issue.

41.     If Mr. Dorton and Mr. Pike had known of the Front Assist Defect, they would not

CLASS ACTION COMPLAINT                    7

have purchased their vehicle or would have paid less for it.

**Plaintiff Tony Carrillo**

42.     Tony Carrillo is a citizen of the State of Illinois and resides in Chicago, Illinois.

43.     Mr. Carrillo owns a 2017 VW Touareg that he purchased new in January 2018 from City Volkswagen of Chicago in Chicago, Illinois.

44.     Prior to purchasing the vehicle, Mr. Carrillo reviewed the Monroney (window) sticker and discussed the vehicle's features with Volkswagen sales representatives.

45.     Mr. Carrillo has lost count of the number of occasions the Front Assist Defect stopped or reduced the speed of Plaintiff Carrillo's vehicle at inappropriate and unsafe times.

46.     Often the Front Assist activates unnecessarily during Mr. Carrillo's normal city driving.

47.     Mr. Carrillo experiences false activations repeatedly when driving on busy streets.

48.     For example, during normal traffic when a vehicle moves into the lane in front of Mr. Carillo, his vehicle slams on brakes even though the vehicle in front is so far in front of Mr. Carillo that there is no chance of impact.

49.     However, this rapid and unwarranted activation of the brakes puts Mr. Carrillo in danger of another vehicle crashing into the rear of his vehicle.

50.     When Mr. Carrillo presented the issue to City Volkswagen he was told there was no issue at all and that the Front Assist was performing as designed. The dealership did not fix the Front Assist Defect.

51.     If Mr. Carrillo had known of the Front Assist Defect, he would not have purchased

CLASS ACTION COMPLAINT                8

his vehicle or would have paid less for it.

**Plaintiff Chris Cates**

52.     Chris Cates is a citizen of the State of New York and resides in Johnsonville, New York.

53.     Mr. Cates owns a 2018 Volkswagen Tiguan that he purchased new in September 2018 from Cooley Motors in Rensselaer, New York.

54.     Prior to purchasing the vehicle, Mr. Cates reviewed the Monroney (window) sticker and discussed the vehicle's features with Volkswagen sales representatives and test drove the vehicle.

55.     The Front Assist Defect has stopped Plaintiff Cates' vehicle at inappropriate and unsafe times on at least 20 occasions.

56.     The vehicle's Front Assist has been triggered by potholes four or five times and by speed bumps at least two times.

57.     Another time, the system was activated by road spikes, causing Plaintiff to almost hit a barrier.

58.     In January of 2019, inappropriate activation of the Front Assist almost caused Plaintiff to be rear-ended by another driver.  More recently the issue has occurred while Mr. Cates had his teenage son in the car.  Each time the Defect presents itself it causes Mr. Cates worry and concern if it will cause a future accident.

59.     Mr. Cates contacted Volkswagen regarding the Front Assist Defect and was told the system was performing as intended.

60.     If Mr. Cates had known of the Front Assist Defect, he would not have purchased

CLASS ACTION COMPLAINT                    9

his vehicle or would have paid less for it.

**Plaintiff Roger Doyle**

61.　　Roger Doyle is a citizen of the State of New York and resides in Bronxville, New York.

62.　　Mr. Doyle owns a 2018 Volkswagen Atlas Premium that he purchased new in March 2018 from Danbury VW of Connecticut.

63.　　Prior to purchasing the vehicle, Mr. Doyle reviewed the Monroney (window) sticker and discussed the vehicle's features with Volkswagen sales representatives.

64.　　On at least 8 occasions the Front Assist Defect stopped Plaintiff Doyle's vehicle at inappropriate and unsafe times

65.　　In one instance, Mr. Doyle was entering a storage unit, and the Front Assist prevented him from fully approaching the security gate staging area. Since he could not pull forward to the correct point, the gate hit his car.

66.　　At several other times, the vehicle became unresponsive during three-point-turns due to the Front Assist improperly engaging.

67.　　The Front Assist has also engaged erratically in parking lots, causing unsafe situations.

68.　　If Mr. Doyle had known of the Front Assist Defect, he would not have purchased his vehicle or would have paid less for it.

**Plaintiff Jacob Miller**

69.　　Jacob Miller is a citizen of the State of Massachusetts and resides in Jamaica Plain, Massachusetts.

70.　　Mr. Miller owns a 2019 VW Golf R that he purchased in March 2020 from Colonial

Volkswagen of Westborough, Massachusetts.

71.    Prior to purchasing the vehicle, Mr. Miller reviewed the Monroney (window) sticker and test drove the vehicle.

72.    On at least 10 occasions the Front Assist Defect stopped Plaintiff Miller's vehicle at inappropriate and unsafe times.

73.    In one instance, Mr. Miller was attempting to leave a parking lot with a steep dip. The Front Assist stopped the vehicle from going down the dip, preventing Mr. Miller from exiting the parking lot.  Mr. Miller had to try many approach angles before finding one that would allow the vehicle to leave the parking lot.

74.    Often when leaving steep driveways, the vehicle will stop apparently sensing that there is no road for the vehicle to travel on.

75.    In another instance, while driving 70 miles per hour on the highway with the cruise control on, the vehicle began braking and for no apparent reason slowed abruptly to approximately 50 miles per hour before it would again accelerate.

76.    If Mr. Miller had known of the Front Assist Defect, he would not have purchased the vehicle or would have paid less for it.

**Plaintiffs Sarah Norris Barlow and Brandon Barlow**

77.    Sarah Norris Barlow and Brandon Barlow are citizens of the State of North Carolina and reside in Newton, North Carolina.

78.    Mr. and Mrs. Barlow own a 2019 Volkswagen Tiguan that they purchased new in May of 2019 from Paramount Volkswagen in Hickory, North Carolina.

79.    Prior to purchasing their Tiguan, Mr. and Mrs. Barlow reviewed Volkswagen's advertising and the Monroney (window) sticker, discussed the vehicle's features with Volkswagen

sales representatives, and test drove the vehicle.

80.     On at least 10 occasions the Front Asist Defect stopped the Plaintiffs' Tiguan at inappropriate and unsafe times.

81.     The Barlows' Front Assist has applied the brakes abruptly at highway speeds, dropping the vehicle's speed from approximately 70 miles per hour to 45 or 50 miles per hour.

82.     The Barlows have also experienced problems with the Front Assist while driving at night.

83.     In one instance, the Front Assist stopped the vehicle so suddenly while backing up, Plaintiffs thought they had hit something.

84.     Plaintiffs presented the Tiguan to a Volkswagen dealership to assess the problems with the Front Assist. While the dealership acknowledged the Front Assist Defect, Plaintiffs were informed there was no fix.  On a second visit, the dealership stated that the vehicle needed a system update to fix the issue.

85.     Mr. and Mrs. Barlow also own a 2019 Volkswagen Jetta that they purchased in June 2018 from Keffer Volkswagen in Huntersville, North Carolina.

86.     Prior to purchasing their Jetta, Mr. and Mrs. Barlow reviewed Volkswagen's advertising and the Monroney (window) sticker, discussed the vehicles features with Volkswagen sales representatives, and test drove the vehicle.

87.     On at least 15 occasions the Front Assist Defect stopped Plaintiffs' Jetta at inappropriate and unsafe times.

88.     Plaintiffs have experienced Front Assist issues on multiple occasions while driving downtown at night.

89.     The Jetta's Front Assist has also beeped and applied the brakes while driving on

the highway with nothing around.

90.     Plaintiffs presented the Jetta to a Volkswagen dealership to assess the problems with the Front Assist, but the dealership said there was no fix for the Front Assist Defect.

91.     If Mr. and Mrs. Barlow had known of the Front Assist Defect, they would not have purchased their vehicles or would have paid less for them.

**Plaintiff Chad Ritterbach**

92.     Chad Ritterbach is a citizen of the State of California and resides in Los Angeles, California.

93.     In October of 2018 Mr. Ritterbach leased a 2019 Volkswagen Jetta SE from Cardinelly Way Volkswagen in Corona, California.

94.     Prior to leasing the vehicle, Mr. Ritterbach reviewed the Monroney (window) sticker and test drove the vehicle.

95.     On at least 5 occasions the Front Assist Defect stopped Plaintiff Ritterbach's vehicle at inappropriate and unsafe times.

96.     The vehicle has stopped automatically several times without reason when reversing from a parked position.

97.     Often when in city traffic the vehicle will forcefully apply the brakes even though the closest vehicle is 3 or more car lengths away.

98.     Mr. Ritterbach has not presented the vehicle to a Volkswagen dealership to assess the problems with the Front Assist, but he spoke with a service representative from the leasing dealership who said that there were no issues with the Front Assist.

**Johnathan Jones**

99.     Johnathan Jones is a citizen of the State of Pennsylvania and resides in Pittsburg,

CLASS ACTION COMPLAINT                    13

Pennsylvania.

100.    Mr. Jones owns a 2016 Touareg TDI Lux that he purchased new from Volkswagen of South Charlotte in Charlotte, North Carolina.

101.    Mr. Jones reviewed the Monroney (window) sticker and was generally familiar with the vehicle before his purchase because he worked for the dealership.  As part of his salesman training he was shown videos and provided training regarding the function of the Front Assist features of these vehicles.

102.    On more than 20 occasions the Front Assist Defect has stopped Mr. Jones' vehicle at inappropriate or unsafe times.

103.    The Front Assist is often engaged when Mr. Jones is passed by larger vehicles even though they are not in his lane.

104.    If Mr. Jones had known of the Front Assist Defect, he would not have purchased his vehicle or would have paid less for it.

**Plaintiffs Mark Pulver and Ashley Pulver**

105.    Mark Pulver and Ashley Pulver are citizens of the state of Utah and reside in Holladay, Utah, in Salt Lake County.

106.    Mr. and Ms. Pulver own a 2018 VW Atlas that they purchased new in December of 2017 at Ken Garff Automotive Group in Orem, Utah.

107.    Prior to purchasing the vehicle, Mr. and Ms. Pulver reviewed the Monroney (window) sticker, reviewed some of Volkswagen's advertising, discussed the vehicle's features with Volkswagen sales representatives, and took the car for a test drive.

108.    On more than 20 occasions, the Front Assist sensors have stopped Plaintiffs'

CLASS ACTION COMPLAINT                    14

vehicle at inappropriate and unsafe times.

109. In one instance, the vehicle stopped while Mr. Pulver was making a left turn and placed him at a standstill in oncoming traffic. Mr. Pulver quickly put the car in park and restarted it.

110. Mr. Pulver complained to the dealer, but the dealer was unable to address the problem.

111. Mr. and Ms. Pulver cannot easily resolve their Front Assist issue by turning off the feature because it must be disabled each time the vehicle is driven, and doing so disables other safety features as well.

112. If Mr. and Ms. Pulver had known of the Front Assist defect, they would not have purchased the vehicle or would have paid less for it.

**The Defendants**

113. Defendant Volkswagen Group of America, Inc. ("Volkswagen USA") is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia, 20171. Volkswagen USA's registered agent in Missouri is Corporation Service Company, 221 Bolivar Street, Jefferson City, Missouri, 65101.

114. Defendant Volkswagen USA is a "wholly owned subsidiary of Volkswagen AG, one of the world's leading automobile manufacturers and the largest carmaker in Europe."[4]

115. Volkswagen AG is headquartered in Wolfsburg, Germany.

116. Volkswagen USA and Volkswagen AG will be collectively referred to herein as "Volkswagen."

117. Volkswagen manufactures, distributes, markets, services, repairs, sells and leases

---

[4] http://www.volkswagengroupofamerica.com/about (last visited Feb. 13, 2020).

CLASS ACTION COMPLAINT                    15

passenger vehicles, including the Class Vehicles.

118.    At all times material to this Complaint, Volkswagen has advertised, marketed, offered for sale, sold, offered for lease, leased, and distributed motor vehicles to consumers in Missouri and throughout the United States, including the Class Vehicles.

119.    Each of the Class Vehicles suffers from the Front Assist Defect as defined herein.

120.    Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the front assist or autonomous braking feature within the Class Vehicles were performed exclusively by Volkswagen.

121.    Upon information and belief, Volkswagen develops the owners' manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

122.    Volkswagen engages in continuous and substantial business in Missouri and throughout the United States.

## TOLLING OF STATUTES OF LIMITATION

123.    Any applicable statute(s) of limitations has been tolled by Volkswagen's knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Front Assist Defect until shortly before this class action litigation was commenced.

124.    Volkswagen was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, that the Front Assist Defect is a safety-related defect, and that it diminishes the resale value of the Class Vehicles. As a result of the active concealment by Volkswagen, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

CLASS ACTION COMPLAINT                16

## FACTUAL ALLEGATIONS

### A.     The Front Assist Defect.

125.     Volkswagen first released its "Forward Collision Warning and Autonomous Emergency Braking (Front Assist)" feature on certain 2015 model vehicles, and has continued to offer the feature on new model vehicles since that time.

126.     According to Volkswagen, its "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not brake at all, the car can apply the brakes automatically." [5]

127.     The Front Assist feature is included in all of the Class Vehicles.

128.     The Front Assist feature was an available option beginning with model year 2015 premium Touareg SUV models.[6]

129.     The Front Assist feature was expanded to the 2016 model year  Jetta[7], Beetle, CC, e-Golf, Golf, Golf GTI, Golf R,  and Golf SportWagen, depending on the model and trim line,[8] and was standard on the Touareg beginning with MY 2016.[9]

---

[5] http://newsroom.vw.com/vehicles/technology/helping-you-on-the-road/ (last visited Feb 17, 2020).

[6] https://www.kbb.com/car-news/2015-volkswagen-touareg-quick-take-moving-up-safely/ (last visited July 30, 2020); https://www.kansascity.com/cars/article26965051.html (last visited July 30, 2020).

[7] https://media.vw.com/en-us/releases/359 (last visited July 30, 2020).

[8] https://www.autoconnectedcar.com/2015/12/volkswagen-adas-features-increased-in-2015/ (last visited July 30, 2020).

[9] https://www.capovw.com/blog//2016-volkswagen-touareg-trim-levels-and-pricing/ (last visited July 30, 2020); https://www.capovw.com/blog/what-driver-assistance-features-does-2017-vw-touareg-offer/ (last visited July 30, 2019).

CLASS ACTION COMPLAINT                    17

130. For the MY 2018 Volkswagen Atlas, the Front Assist feature was available as an option on both the "2.0T" and "V6" trim levels.[10]

131. For the MY 2018 Volkswagen Tiguan, the Front Assist feature was offered as a standard feature in the SE, SEL, and SEL Premium trim vehicles, and as part of the Driver Assistance Package for SE trim vehicles.[11]

132. For the MY 2019 Volkswagen Atlas and Golf vehicles, the Front Assist feature was included as a standard feature in all trim levels.[12]

133. For the MY 2019 Volkswagen Tiguan, the Front Assist feature was offered as a standard feature in the SE, SEL, SEL R-Line, SEL Premium and SEL Premium R-Line trim vehicles, as part of the Driver Assistance Package for SE trim vehicles, and with later availability for jet black R-Line trim vehicles.[13]

134. For the 2019 Jetta, Front Assist was a standard feature on SE trim levels and above, and an available feature on the base S trim.[14]

135. Volkswagen has announced that by 2022, "Front Assist and autonomous emergency breaking (AEB) are expected be standard on nearly all Volkswagen models – an important step toward accident prevention."[15]

_____

[10] https://www.vw.com/content/dam/vwcom/brochures/2018/VWA-10692926_MY18_ATLAS_Digital.pdf (last visited Feb. 13, 2020).
[11] https://www.vw.com/content/dam/vwcom/brochures/2018/VW_MY18_Tiguan_Digital.pdf (last visited Feb. 13, 2020).
[12] https://www.vw.com/content/dam/vwcom/brochures/2019/VWA-10928390_2019_Atlas_Digital.pdf (last visited Feb. 13, 2020); https://www.compassvw.com/blog/is-automatic-emergency-braking-standard-on-the-2019-volkswagen-golf-alltrack/ (last visited July 30, 2020).
[13] https://dealerinspire-brochure.s3.amazonaws.com/1842.pdf (last visited Feb. 13, 2020).
[14] https://www.schworervolkswagen.com/blog/2019-vw-jetta-trim-levels-and-pricing-announced/ (last visited July 30, 2020); https://www.teamgunthervw.com/blog/driver-assistance-features-2019-volkswagen-jetta/ (last visited July 30, 2020).
[15] https://media.vw.com/en-us/releases/1183 (last visited Feb. 14, 2020).

CLASS ACTION COMPLAINT                    18

**B. Volkswagen's Knowledge of the Front Assist Defect**

136. Upon information and belief, Volkswagen, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and (6) other various sources, is and was well aware of the Front Assist Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or to provide any adequate remedy.

137. Volkswagen failed to adequately research, design, test and/or manufacture the Front Assist feature in the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

138. Volkswagen is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Volkswagen conducts tests, including pre-sale durability testing, on incoming components, including the Front Assist feature, to verify that the parts are free from defects and align with Volkswagen's specifications.

139. Volkswagen touts its quality efforts to investors:

Every day, we actively assume and exercise responsibility in relation to the environment, safety and society, and we wish to be a role model in these areas. Integrity, reliability, quality and passion thus form the basis for our work. In this way, we will aim for technological leadership in the industry, ensure our competitive profitability and remain an excellent, reliable and secure employer at the same time.[16]

140. Volkswagen further tells investors about its Together 2025+ Strategy as part of its quality control efforts:

---

[16] https://annualreport2018.volkswagenag.com/servicepages/downloads/files/entire_vw_ar18.pdf (last visited Feb. 14, 2020).

Delivering outstanding quality and reliable mobility to customers worldwide is the strategic objective of the Quality Assurance department. As the "voice of the customer" the principle of dual control is relied on in critical company processes; products that are superior to those of the competition are developed within budget requirements. The department's commitment to quality runs the gamut of current and future mobility solutions – vehicles as well as services. Last but not least, all markets will pay close attention to differing regional needs to make a substantial contribution to the Volkswagen Group's sustainable growth.[17]

141. Through its quality control measures, Volkswagen knew or should have known that the Front Assist feature of the Class Vehicles was defective.

142. When Class Members complain to authorized Volkswagen dealers about the Front Assist Defect, they are often advised to simply disable the feature or to continue driving with it activated and to document its malfunctions.

## C.    **Volkswagen's Warranty and the Class Vehicles**

143. Volkswagen expressly warranted the Class Vehicles to be free from defects for a period of six (6) years or 72,000 miles under the New Vehicle Limited Warranty.[18] The New Vehicle Limited Warranty is applicable to the Front Assist Defect; however, Volkswagen has failed to correct the issue.

144. Volkswagen has also warranted that:

Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision. If the driver does not brake at all, the car can apply the brakes automatically.

145. Volkswagen also touts the safety and reliability of the Class Vehicles.

146. Buyers, lessees, and other owners of the affected Vehicles were without access to

---

[17] https://www.volkswagenag.com/en/group/strategy.html (last visited Feb. 14, 2020).
[18] https://www.vw.com/content/vwcom/en/warranty/ (last visited Feb. 13, 2020).

CLASS ACTION COMPLAINT                    20

the information concealed by Volkswagen as described herein, and therefore reasonably relied on Volkswagen's representations and warranties regarding the quality, durability, and other material characteristics of the Class Vehicles. Had Plaintiffs and the class known of the defect and the potential harm, they would have paid less for the Class Vehicles or would not have purchased the Class Vehicles.

**D.** **Complaints by Other Class Members.**

147. Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Front Assist Defect in the Class Vehicles.[19]

148. Class Vehicle owners and lessees have publicly complained to the United States government about the Front Assist Defect in Class Vehicles since the vehicles were released. The Office of Defects Investigation ("ODI") is an office within the National Highway Traffic Safety Administration ("NHTSA"). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.[20] All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued.

149. The following is just a small sampling of the many complaints submitted to ODI by Volkswagen Atlas and Tiguan owners. These publicly-available complaints, submitted as early as October 2017, evidence Volkswagen's prior knowledge of the Front Assist Defect, the negative

---

[19] *See*, e.g., https://medium.com/@joseph.wildey/consumers-cite-breaking-automatic-emergency-braking-systems-466a9f183377 (last visited Feb. 13, 2020); https://www.vwatlasforum.com/threads/front-assist-system-breaking-when-it-shouldn%E2%80%99t.2571/ (last visited Feb. 14, 2020).
[20] *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited April 10, 2018). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

CLASS ACTION COMPLAINT                     21

experiences encountered by Class Members, and the financial burden this places on them.

**Consumer No. 1:**
NHTSA ID Number: 11110298
Date of Incident: Oct. 20, 2017
Consumer Location: Unknown
Vehicle Identification No. (VIN): 1V2ER2CAXJC****
Summary of Complaint:

The contact owns a 2018 Volkswagen Atlas. While driving various speeds and approaching a minor incline, the brake sensor beeped and the automatic brake light illuminated. The failure recurred several times. The vehicle was taken to McKenna Volkswagen Cerritos (18303 Studebaker Rd, Cerritos, CA 90703, 855-995-7761) where the technician, after consulting with the manufacturer in Germany, advised the contact to feel free to turn off the feature. The manufacturer was made aware of the failure and stated that the vehicle was operating as designed. The failure was not repaired. The failure mileage was approximately 100. *

**Consumer No. 2:**
NHTSA ID Number: 111102848
Date of Incident:  March 1, 2018
Consumer Location:  Bethel, CT
Vehicle Identification No. (VIN): 1V2MR2CA1JC****
Summary of Complaint:

TL* the contact owns a 2018 Volkswagen Atlas. Within weeks of owning the vehicle, there was a failure with the strut mounted system. Furthermore, an abnormal rattling noise was heard on both sides of the front end of the vehicle. In addition, the front assist with autonomous emergency braking system engaged several times without warning. The failure caused the vehicle to seize while in motion with no other vehicle nearby. The dealer (Danbury Volkswagen, 29 Sugar Hollow Rd, Danbury, CT 06810, (203) 744-5201) had the vehicle for over two months for servicing. The cause of the failures was not determined. The manufacturer was notified. The failure mileage was not available.

**Consumer No. 3:**
NHTSA ID Number: 11269439
Date of Incident:  July 28, 2019
Consumer Location:  Chapin, SC
Vehicle Identification No. (VIN): 1V2ER2CA5JC****
Summary of Complaint:

The car [2018 Atlas] stops on its own while driving, all lights on dash illuminate, and car starts again as if nothing happened. Twice going up the driveway and three times while on back roads. No one was in front of or behind us for two of the times. One of the times, it was during traffic so the speed was slow enough not to have an impact. One other time it stopped about half a car length away from the curb when parking the car. While on the highway, going 70, with the blinker on to get over to

the center lane, the car jerked me back to the right..I was in the right lane, a car in front of me, a car behind me, no cars in the middle lane, and two in the far left lane coming up. Absolutely no reason for the car to think there was a car to the left of me. The two cars in my original lane and the two cars in the far left lane remained in those lanes. I have taken the car to two different dealerships, a total of three times and they could not recreate the problem, so they are unable to fix the issues. My case was escalated to the se regional case manager, who put the case in for review to buy back the vehicle and was notified today, 10/18/2019, that they are not going to buy it back but they will continue to service the vehicle under the warranty. How can they service the vehicle if they can?t find anything wrong with the vehicle. I can?t believe they expect to drive this unsafe vehicle until someone dies! I paid extra to buy this vehicle for the safety features, which is what is causing this to be unsafe. It would be unethical to sale the car, but too unsafe for me to drive and put my family at risk of getting in a vehicle accident and dying. Please have a recall issued to address the issues before someone dies and telling consumers to disable these functions is not the right answer either. I have had issues from the beginning, but thought it was hiccups. Date is approximate.

**Consumer No. 4:**
NHTSA ID Number: 11244122
Date of Incident: August 13, 2019
Consumer Location: Newtown Square, PA
Vehicle Identification No. (VIN): 1V2NR2CA6JC****
Summary of Complaint:

When exiting a driveway into traffic, if there is a decline or hill, the automatic breaking [on 2018 Atlas] causes the car to stall in the middle of the road. This has happened several times now in 2 different places. The sensors start beeping and the car will shut down where you have no control. You have to put the car back in gear and restart the engine. This is very dangerous. I let the service department at VW in Devon know and they said they couldn't find anything wrong with it after running diagnostics.

**Consumer No. 5:**
NHTSA ID Number: 11280610
Date of Incident: August 5, 2019
Consumer Location: North Tonawanda, NY
Vehicle Identification No. (VIN): 3VV0B7AX7KM****
Summary of Complaint:

I was driving down a side road in a parking lot with no cars in front of me and no one in back of me. Suddenly the car [2019 Tiguan] braked and threw me forward. It scared the living daylights out of me. There was no reason why this happened. There was nothing in the road. I reported this problem to Volkswagen and they had no answer and told me to disable the braking sensor which I did. I felt the need to report this issue since I felt this was a possible defect in the braking sensor. If this would have happened on a busy road I could have been hit from behind. Again there was no reason for the sudden braking. This is a leased car and when I turn it

in I just want to let them know that the sensor is turned off for the next person who leases it and has no idea it is turned off. In summary, I was going around 35-40 mph when this braking occurred with no reason whatsover. Thank you for your time.

**Consumer No. 6:**
NHTSA ID Number: 11230520
Date of Incident:  April 1, 2019
Consumer Location:  Schererville, IN
Vehicle Identification No. (VIN): 3VV2B7AX4KM****
Summary of Complaint:

The automatic breaking sensors went off for no reason. Car [2019 Tiguan] started breaking on it's own. Luckily no car behind me. Car was in motion on a 35 mph part of route 30 in Indiana when it started to break suddenly. Took it to the dealership and they could not replicate it. I sent Volkswagen a message and they didn't reply.

**Consumer No. 7:**
NHTSA ID Number: 1129998
Date of Incident:  July 7, 2019
Consumer Location:  Seaford, NY
Vehicle Identification No. (VIN): 3VV2B7AX1KM****
Summary of Complaint:

My wife wasdriving [2019 Tiguan] down a residential street no cars in front or behind. The autonomous brakes activated and brought car to full stop for no reason.

**Consumer No. 8:**
NHTSA ID Number: 112337706
Date of Incident:  July 20, 2019
Consumer Location:  Unknown
Vehicle Identification No. (VIN): 3VV2B7AX5JM****
Summary of Complaint:

My wife and I were driving in our [2018] Tiguan with our 7 month old and 3 year old in the back. We were driving approximately 35-40mph on a residential street during the day with good visibility. As we approached a metal plate over the road (for a road construction project) the Tiguan's "front assist" system caused the car to nearly skid to a stop. The car behind us luckily did not rear end us but had we been going faster and the car behind us had been following closer, the outcome would have been much worse. This is a worrying problem because the metal plate was no more than an inch higher than the pavement and is a very standard thing to see in construction sites. It should not have caused the front assist to activate.

**Consumer No. 9:**
NHTSA ID Number: 11194803
Date of Incident:  February 17, 2019
Consumer Location:  West Hollywood, CA
Vehicle Identification No. (VIN): 3VV2B7AX8JM****

CLASS ACTION COMPLAINT                    24

Summary of Complaint:

On 2/17/2019, my sister & I were driving [2018 Tiguan] west on Santa Monica Blvd I was driving approximately 40-45mph. It was slightly overcast. There were no cars in front of us for blocks &, luckily, no cars behind us. There were no bicycles or motorcycles or pedestrians or any other apparent "hazard" in front or on either side of the car. Out of nowhere, the car's brakes slammed on, leaving us stopped in the middle of Santa Monica Blvd. The digital cockpit went black & a red warning light started flashing across it. I asked my sister to grab the owners manual to try to figure out what was going on. After she grabbed it, the vehicle started driving again & shortly after that the digital cockpit went back to normal. It turned out the warning light was associated with the front assist system.

I took my vehicle back to the dealership on 2/21/2019. On 4/6/2019, having fixed nothing, they forced me to take my car back. They performed a diagnostic test on 2/25/2019 that my sister & I saw, but they are refusing to provide me a copy of. In that diagnostic it did show that the distance monitoring system failed in 11/2018. The front assist does not show a fail or that it has ever been activated. Because my dealership has not been able to "duplicate" the malfunction, I am being told that this a normal function of the car. VW also wanted me to keep a journal for when this malfunction happens again - as I've explained to VW & my dealership, the next time this happens there could be an accident that results in injury or death. I was still forced to take the car back.

I am too scared to drive this car knowing that there is something malfunctioning with the sensors, autonomous braking system, front assist system. I am extremely worried about the malfunction causing an accident that could injure myself, my passengers, & other people on the roads.

**Consumer No. 10:**
NHTSA ID Number: 11255259
Date of Incident: September 6, 2019
Consumer Location: Aledo, TX
Vehicle Identification No. (VIN): 1V2ER2CA0KC****
Summary of Complaint:

Automatic braking stops car [2019 Atlas] when exiting parking lot onto main road, could not pull straight out of parking lot. Emergency braking deployed 3 times. On coming traffic had to stop because car would not move unit I turned system off. Multiple cars were behind me and could not back up enough to not block traffic. No obstructions where in front of me just slightly steeper angle exiting parking lot.

**Consumer No. 11:**
NHTSA ID Number: 11254778
Date of Incident: July 21, 2019
Consumer Location: Miami, FL
Vehicle Identification No. (VIN): 1V2WR2CA1KC****
Summary of Complaint:

Upon accelerating my 2019 VW Atlas down an empty street between 10 to 20 miles per hour the autonamous emergency brake sensor malfunctioned and the car suddenly came to a complete stop jolting us forward. It was so unexpected that my hands slipped off the steering wheel and landed on the dash board. The halt came with a very loud noise. As I explained to the dealership technician and VW corporate office regional case manager, there was no vehicle in front of me. There were no pedestrians, animals, obstacles, etc. on the roadway. The day was sunny and the grill emblem that houses the system sensor was unobstructed and clean. If there would have been a vehicle behind me I would have been rear ended. The dealership told me that "they could not duplicate the issue" and per corporate engineers the sensor is working per specifications and no fault codes were found with the sensor. Imagine receiving this explanation after that scary incident happens to you out of no where. Now I can't get back into the vehicle without thinking when it will happen next. Too have written a letter to the CEO of Volkswagen seeking a resolution to the problem. My thought is that it's a problem with the sensor's software code and Volkswagen doesn't have a solution. Please I ask that this issue be investigated and a recall be issued.

## CLASS ACTION ALLEGATIONS

150.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed nationwide class is defined as follows:

**Nationwide Class:**
All persons or entities in United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

151.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses:

**Missouri Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Missouri or purchased a Class Vehicle in Missouri. (the "Missouri Subclass").

**California Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in California or purchased a Class Vehicle in California (the "California Subclass").

**Florida Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Florida or purchased a Class Vehicle in Florida (the "Florida Subclass").

**Illinois Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Illinois or purchased a Class Vehicle in Illinois (the "Illinois Subclass").

**Massachusetts Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Massachusetts or purchased a Class Vehicle in Massachusetts (the "Massachusetts Subclass").

**New York Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in New York or purchased a Class Vehicle in New York (the "New York Subclass").

**North Carolina Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in North Carolina or purchased a Class Vehicle in North Carolina (the "North Carolina Subclass").

**Pennsylvania Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Pennsylvania or purchased a Class Vehicle in Pennsylvania (the "Pennsylvania Subclass").

**Utah Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Utah or purchased a Class Vehicle in Utah (the "Utah Subclass").

**Kansas Subclass:**
All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in Kansas or purchased a Class Vehicle in Kansas (the "Kansas Subclass").

152.    Together, the National Class and the state Subclasses shall be collectively referred to herein as the "Class."

153.    Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned

CLASS ACTION COMPLAINT                    27

to this case. Plaintiff reserves the right to modify, change or expand the Class definitions after conducting discovery.

154. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Volkswagen and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that thousands of Class Vehicles have been sold and leased throughout the United States, including thousands within each of the state Subclasses.

155. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a. whether the Class Vehicles contain a defect related to the Front Assist feature that causes automatic brakes to unexpectedly engage for no reason;

    b. whether the Front Assist Defect is common to all or some of the Class Vehicles;

    c. whether the Front Assist Defect is a safety issue;

    d. whether Defendants concealed or failed to disclose the existence and cause of the Front Assist Defect in Class Vehicles;

    e. whether Defendants' conduct violates state consumer protection statutes;

    f. whether Defendants' conduct violates the Magnuson-Moss Warranty Act;

    g. whether Defendants have breached any express warranties as to the Class Vehicles;

    h. whether Defendants have breached any implied warranties as to the Class Vehicles;

    i. whether, as a result of Defendants' omissions and/or misrepresentations of material

CLASS ACTION COMPLAINT 28

facts related to the Front Assist Defect, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

j. whether Defendants have been unjustly enriched through the sales of the Class Vehicles that have the Front Assist Defect;

k. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief; and

l. whether Plaintiffs are entitled to injunctive relief.

156. <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased or leased a Class Vehicle with the Front Assist Defect. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Volkswagen's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

157. <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

158. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Volkswagen's conduct. It would be virtually impossible for members of the Class to individually and effectively

redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Volkswagen's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

159.     Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Volkswagen has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT ONE
### Violation of the Magnuson-Moss Warranty Act
### (15 U.S.C. § 2310(d)(1) and/or 2310(d)(2))
### (Brought by All Plaintiffs On Behalf of the Nationwide Class)

160.     Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

161.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.,* provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations.

162.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

CLASS ACTION COMPLAINT                    30

163.    Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

164.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

165.    Defendants provide an express warranty with the sale or lease of a Class Vehicle.

166.    Defendants expressly warrant that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

167.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

168.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

169.    Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

170.    An implied warranty of merchantability arose in connection with Plaintiff's purchase or lease of the Class Vehicles by operation of state law under the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(7).

171.    The Class Vehicles, when sold or leased, and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

172.    Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

173.    Accordingly, Defendants breached the implied warranty of merchantability by selling Plaintiff and Class members Class Vehicles containing the Front Assist Defect, and thereby violated the Magnuson-Moss Warranty Act.

174.    Consequently, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

<u>**Missouri Causes of Action**</u>
**COUNT TWO**
**Violation of the Missouri Merchandising Practices Act (MMPA)**
**(Mo. Rev. Stat. §407.010 *et seq.*)**
**(Brought by Plaintiff Kim Hensley-Hauser)**

175.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

176.    The MMPA provides that it is unlawful to "act, use or employ. . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. . . ." Mo. Rev. Stat. § 407.020.1.

177.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert

CLASS ACTION COMPLAINT                  32

you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision. If the driver does not brake at all, the car can apply the brakes automatically."

178.    This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

179.    Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

180.    Defendants' conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce.

181.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

182.    In violation of the MMPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

183.    Plaintiff purchased her vehicle for personal, family, or household purposes.

184.    Plaintiff suffered ascertainable losses as a result of Defendants' unlawful conduct as alleged herein.

185.    Had Plaintiff known the truth about the vehicles, she would not have purchased the vehicle, or would not have paid as much.

CLASS ACTION COMPLAINT               33

186.     Plaintiff and the Class are entitled to damages under the MMPA.

## COUNT THREE
### Breach of Express Warranty Under Missouri Law
### (Mo. Stat. §§400.2-314 and 400.2A212)
### (Brought by Ms. Hensley-Hauser)

187.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

188.     Defendants were at all times "merchants," "sellers" and "lessors" under Mo. Stat. §§ 400.2-103(1)(d), 400.2-104(1) and 400.2A-103(1)(p).

189.     Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

190.     Defendants also expressly warranted that the Class Vehicles – including the Front Assist feature -- were of high quality and, at a minimum, would work properly.

191.     Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

192.     Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

193.    As a result of the Defendants' actions, Plaintiff and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

194.    Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect.  Furthermore, Defendants have failed to repair the Defect.

195.    A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

196.    Plaintiff and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

197.    Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

**COUNT FOUR**
**Breach of Implied Warranty Under Missouri law**
**(Brought by Ms. Hensley-Hauser)**

198.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

199.    Defendants were at all times "merchants," "sellers" and "lessors" under Mo. Stat. §§ 400.2-103(1)(d), 400.2-104(1) and 400.2A-103(1)(h).

200.    A warranty that the Class Vehicles were in merchantable condition is implied by

CLASS ACTION COMPLAINT                              35

law.

201.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

202.    Defendants were provided notice of these issues by numerous informal and formal complaints filed against it, through online complaints and discussions and by complaints lodged with NHTSA.

203.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT FIVE**
**Unjust Enrichment Under Missouri Law**
**(Brought by Ms. Hensley-Hauser)**

204.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

205.    Plaintiff and the Class conferred a benefit on Defendants by purchasing the Class Vehicles.

206.    Defendants had knowledge that this benefit was conferred upon it.

207.    Because of their wrongful acts and omissions, Defendants charged a higher price for the Class Vehicles than the Class Vehicles' true value, and Defendants obtained money which rightfully belongs to Plaintiff and the Class.

208.    Defendants were and continue to be unjustly enriched at the expense of Plaintiff

and Class members.

209.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

210.   Plaintiff and the Class are entitled to disgorgement of this benefit in an amount to be determined at trial.

## California Causes of Action

### COUNT SIX
### Violation of the Consumers Legal Remedies Act
### (Cal. Civ. Code 1750 *et seq.*)
### (Brought by Mr. Ritterbach)

211.   Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

212.   The Class Vehicles are "goods" under Civil Code section 1761(a).

213.   Plaintiff and the Class members are "consumers" under Civil Code section 1761(d).

214.   Under section 1770(a) of the CLRA:

 (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
* * *
(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;
* * *
(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
* * *
(9) Advertising goods or services with intent not to sell them as advertised;

* * *
(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.  Id. § 1770(a).

215.     As alleged above, Defendants violated, and continue to violate, Civil Code sections 1770(a)(5), (7), (9) and (16) by advertising and representing the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have. Specifically, Defendants represent the Class Vehicles are safe, usable, and defect-free when in fact they contain the Front Assist Defect.

216.     Plaintiff and the Class members have been injured in fact and lost money as a result of Defendants' conduct of improperly describing the Class Vehicles as safe, usable, and defect-free. Plaintiff and the Class members paid for safe, usable, and defect-free automobiles but did not receive such products because the Class Vehicles contain the Front Assist Defect.

217.     Upon information and belief, Defendants' actions were willful, wanton, and fraudulent.

218.     On July 24, 2020, Mr. Ritterbach, through counsel, sent a CLRA demand letter to Defendants that provided notice of Defendants' violation of the CLRA and demanded Defendants correct, repair, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA.

219.     At this stage, Mr. Ritterbach seeks only injunctive relief under the CLRA. Specifically, Mr. Ritterbach seeks an injunction to bar Defendants from continuing their deceptive practices.

220.     If Defendants do not comply with the demands in the notice letter, Mr. Ritterbach will assert claims for damages under the CLRA.

CLASS ACTION COMPLAINT                 38

**COUNT SEVEN**
**Violation of the "Unlawful" Prong of the Unfair Competition Law**
**(Cal Bus. & Prof. Code § 17200)**
**(Brought by Mr. Ritterbach)**

221.     Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

222.     California's Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent" business practice.  Defendant's marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

223.     A business practice is "unlawful" under the UCL if it violates any other law or regulation.

224.     Defendants' conduct violates various provisions of California's Consumer Legal Remedies Act, including Civil Code § 1770(a)(5), (7), (9) and (16).

225.     Defendants conduct also violates the Transportation Recall Enhancement, Accountability and Documentation Act, or "TREAD Act," 49 U.S.C. §31010 *et seq*.  The TREAD Act requires that Defendants report safety defects to NHTSA.

226.     As a result of the conduct described above, Defendants have been, and will continue to be, enriched at the expense of Plaintiff and the other Class members.

227.     Specifically, Defendants have been enriched by obtaining revenues and profits they would not otherwise have obtained absent their false, misleading, and deceptive practices.

228.     Plaintiff seeks to enjoin further unlawful, unfair, and fraudulent acts and practices by Defendants, to obtains restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

CLASS ACTION COMPLAINT               39

## COUNT EIGHT
## Violation of the "Unfair" Prong of the Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200).
### (Brought by Mr. Ritterbach)

229.     Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

230.     California's Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent" business practice. Defendant's marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

231.     A business practice is "unfair" under the UCL if the gravity of the harm to the victim outweighs the utility of the defendant's conduct.

232.     Defendants have violated, and continue to violate, the "unfair" prong of the UCL by luring consumers into buying the Class Vehicles by representing they are safe, usable, and defect-free, as discussed herein.

233.     The gravity of the harm to Plaintiff and the Class members resulting from these unfair acts and practices outweighs any conceivable utility of Defendants' conduct.

234.     As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and the Class members. Specifically, Defendants have been enriched by obtaining revenues and profits they would not otherwise have obtained absent their false, misleading, and deceptive practices.

235.     Plaintiff seeks to enjoin further unlawful, unfair, or fraudulent acts and practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

CLASS ACTION COMPLAINT                    40

## COUNT NINE
## Violation of the "Fraudulent" Prong of the Unfair Competition Law
## (Brought by Mr. Ritterbach)

236.     Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

237.     California's UCL prohibits any "unlawful, unfair, or fraudulent" business practice. Cal. Bus. & Prof. Code § 17200. Defendants' marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

238.     A fraudulent business practice is one in which members of the public are likely to be deceived.

239.     Defendants have violated, and continue to violate, the "fraudulent" prong of the UCL by luring consumers into buying the Class Vehicles by representing safe, usable, and defect-free as discussed herein.

240.     As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and the Class members. Specifically, Defendants have been enriched by obtaining revenues and profits they would not otherwise have obtained absent their false, misleading, and deceptive practices.

241.     Plaintiff seeks to enjoin further unlawful, unfair, or fraudulent acts and practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

CLASS ACTION COMPLAINT              41

## COUNT TEN
### Violation of the False Advertising Law
### (Cal. Bus. & Prof. Code §§ 17500 *et seq*. ("FAL")).
### (Brought by Mr. Ritterbach)

242. Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

243. This cause of action is brought under California's False Advertising Law, California Business & Professions Code §§ 17500 *et seq*. ("FAL").

244. The FAL prohibits the dissemination of any advertising which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

245. Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not brake at all, the car can apply the brakes automatically."

246. This statement is false and misleading because the Front Assist Feature does not work as advertised.

247. Defendants also represented, and continue to represent, that the Class Vehicles are safe, usable, and defect-free, which is untrue and misleading because of the existence of the Front Assist Defect. The marketing and advertising is unfair, deceptive, and misleading within the meaning of California Business & Professions Code §§ 17500, *et seq*.

248. Defendants' violation of the FAL caused injury in fact to Plaintiff and the Class by deceiving them into purchasing Class Vehicles on terms that they otherwise would not have.

CLASS ACTION COMPLAINT 42

Plaintiff and the Class seek all appropriate remedies under the FAL.

**COUNT ELEVEN**
**Breach of Express Warranty**
**(Cal. Com. Code §§ 2313 and 10210)**
**(Brought by Mr. Ritterbach)**

249.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

250.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), "sellers" of motor vehicles under § 2103(1)(d) and "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

251.    Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

252.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

253.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

254.    Defendants breached these warranties by selling to Plaintiff and Class members the

CLASS ACTION COMPLAINT                    43

Class Vehicles with the known Front Assist Defect.

255. As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

256. Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect. Furthermore, Defendants have failed to repair the Defect.

257. A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

258. Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

259. In connection with the purchase or lease of each one of their new vehicles, the Defendants provided an express New Vehicle Limited Warranty ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

260. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

261. As a direct and proximate result of the Defendants' breach of express warranties,

Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT TWELVE
### Breach of Implied Warranty of Merchantability
### (Cal. Com. Code §§ 2314 and 10212)
### (Brought by Mr. Ritterbach)

262.    Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

263.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), "sellers" of motor vehicles under § 2103(1)(d), and "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

264.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

265.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

266.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

267.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

## COUNT THIRTEEN
### Violations of Song-Beverly Consumer Warranty Act For Breach of Express Warranty
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))
### (Brought by Mr. Ritterbach)

Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

CLASS ACTION COMPLAINT                    45

268. Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

269. Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

270. Defendants made express warranties to Plaintiff and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

271. Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

272. Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

273. Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

274. Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

275. As a result of Defendants' breach of their express warranties, Plaintiff and the other

Class members received goods whose dangerous condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value, malfunction, and nonuse of their Class Vehicles.

276. Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## COUNT FOURTEEN
### Violations of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability
### (Cal. Civ. Code §§ 1791.1 & 1792)
### (Brought by Mr. Ritterbach)

277. Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

278. Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

279. Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

280. Defendants impliedly warranted to Plaintiff and the other Class Members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

281. However, the Class Vehicles do not have the quality that a reasonable purchaser would expect.

282. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the

following:

> (1) Pass without objection in the trade under the contract description.
>
> (2) Are fit for the ordinary purposes for which such goods are used.
>
> …
> (4) Conform to the promises or affirmations of fact made on the container or label.

283.    The Class Vehicles would not pass without objection in the trade because of the Front Assist Defect.

284.    The Class Vehicles are not fit for the ordinary purpose for which they are used because of the Front Assist Defect.

285.    The Class Vehicles do not conform to the promises or affirmations of fact made by Defendants.

286.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the Front Assist Defect. The existence of the Front Assist Defect has caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

287.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Class Vehicles.

288.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class

Vehicles. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**Florida Causes of Action**

**COUNT FIFTEEN**
**Violation of Florida's Unfair and Deceptive Trade Practices Act**
**(FLA. STAT. § 501.201, *et seq*.)**
**(Brought by Mr. Dorton and Mr. Pike)**

289.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

290.     Mr. Dorton and Mr. Pike are "consumers" under Fla. Stat. § 501.203(7).

291.     Defendants were engaged in "commerce" under Fla. Stat. § 501.203(8).

292.     The Florida Unfair and Deceptive Trade Practices Act at Fla. Stat. § 501.204(1) prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce."

293.     Defendants' conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce, in that Defendants sold the Class Vehicles without disclosing the Front Assist Defect.

294.     Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not brake at all, the car can apply the brakes automatically."

CLASS ACTION COMPLAINT                    49

295. This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

296. Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

297. Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs.

298. In violation of the Florida Unfair and Deceptive Trade Practices Act, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

299. Plaintiffs purchased their vehicle for personal, family, or household purposes.

300. Plaintiffs suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

301. Had Plaintiffs known the truth about the vehicle, they would not have purchased the vehicle, or would not have paid as much.

302. Mr. Dorton and Mr. Pike seek damages, attorneys' fees and all other appropriate relief under the Florida Deceptive Trade Practices Act.

**COUNT SIXTEEN**
**Unjust Enrichment Under Florida Law**
**(Brought by Mr. Dorton and Mr. Pike)**

303. Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

304. Plaintiffs and the members of the Florida Subclass conferred a benefit on Defendants by purchasing the Class Vehicles.

CLASS ACTION COMPLAINT 50

305.    Defendants knew that the benefit of the purchases of the Class Vehicles was conferred upon them.

306.    Defendants accepted the benefit of the purchases of the Class Vehicles.

307.    Because of its wrongful acts and omissions, Defendants charged a higher price for the Class Vehicles than the Class Vehicles' true value, and Defendants obtained money which rightfully belongs to Plaintiffs and the Class.

308.    Defendant's retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

<u>**Illinois Causes of Action**</u>

**COUNT SEVENTEEN**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/1 *et seq*. and 720 ILCS 295/1a)**
**(Brought by Plaintiff Tony Carrillo)**

309.    Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

310.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

311.    Defendants willfully violated the Illinois CFA by selling the Class Vehicles without disclosing the Front Assist Defect.

312.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert

CLASS ACTION COMPLAINT                    51

you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision. If the driver does not break at all, the car can apply the brakes automatically."

313.     This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

314.     Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

315.     Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

316.     In violation of the Illinois CFA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

317.     Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

318.     Had Plaintiff known the truth about the vehicle, he would not have purchased the vehicle, or would not have paid as much.

319.     Mr. Carrillo seeks damages, attorneys' fees and all other appropriate relief under the Illinois CFA.

CLASS ACTION COMPLAINT          52

**Breach of Express Warranty Under Illinois Law**
**(810 Ill. Comp. Stat.  §§ 5/2-313 and 5/2A-210)**
**(Brought by Mr. Carrillo)**

320.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

321.     Defendants are "merchants," "sellers," and "lessors" under 810 Ill. Comp. Stat. §§ 5/2A-104(1), 5/2A-103(3) and 5/2-103(1)(d).

322.     Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

323.     Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

324.     Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

325.     Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

326.     As a result of the Defendants' actions, Plaintiffs and Class members have suffered

economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

327.     Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect.  Furthermore, Defendants have failed to repair the Defect.

328.     A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

329.     Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

330.     Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

331.     As a direct and proximate result of the breach, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

**COUNT NINETEEN**
**Breach of Implied Warranty of Merchantability Under Illinois Law**
**(810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)**
**(Brought by Mr. Carrillo)**

332.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

333.     Defendants are "merchants," "sellers," and "lessors" under 810 Ill. Comp. Stat. §§

5/2-104(1), 5/2A-103(3), 5/2-103(1)(d) and 5/2-103(1)(d).

334.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

335.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

336.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

337.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount be determined at trial.

**COUNT TWENTY**
**Unjust Enrichment Under Illinois Law**
**(810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)**
**(Brought by Mr. Carrillo)**

338.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

339.    Plaintiff and the Class conferred a benefit on Defendants by purchasing the Class Vehicles.

340.    Defendants knew that the benefit of the purchases of the Class Vehicles was conferred upon them.

CLASS ACTION COMPLAINT                    55

341.     Defendants accepted the benefit of the purchases of the Class Vehicles.

Because of its wrongful acts and omissions, Defendants charged a higher price for the Class

Vehicles than the Class Vehicles' true value, and Defendants obtained money which rightfully

belongs to Plaintiff and the Class. Defendant's retention (without an offsetting return payment) of

the benefit conferred upon it by Plaintiff and members of the Class would be unjust and

inequitable.

342.     Plaintiffs are entitled to disgorgement of this benefit in an amount to be determined

at trial.

### Massachusetts Causes of Action

### COUNT TWENTY-ONE
### Breach of Express Warranty Under Massachusetts Law
### (MGL c. 106 §§ 2-313 and 2A-210)
### (Brought by Mr. Miller)

343.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if

they had been set forth in full herein.

344.     Defendants are "merchants" and "sellers" of the Vehicles under MGL c. 106 §§ 2-

104(1) and 2-103(1)(d).

345.     Defendants expressly warranted that that the Front Assist feature "can help monitor

traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle

moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking

(included in Front Assist) can support the driver with increased brake pressure or, if the driver

does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in

Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain

circumstances, can brake automatically to help mitigate the outcome of a collision with a

pedestrian if the driver doesn't respond to the warnings."

CLASS ACTION COMPLAINT                56

346. Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

347. Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

348. Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

349. As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

350. Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect. Furthermore, Defendants have failed to repair the Defect.

351. A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

352. Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

353. Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

354. As a direct and proximate result of the breach, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## COUNT TWENTY-TWO
### Breach of Implied Warranty of Merchantability Under Massachusetts Law
### (MGL c. 106. §§ 2-314 and 2A-212)
### (Brought by Mr. Miller)

355. Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

356. Defendants are "merchants" and "sellers" of the Vehicles under MGL c. 106 §§ 2-104(1) and 2-103(1)(d).

357. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to M.G.L. c. 106 §§ 2-314 and 2A-212.

358. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

359. Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

360. As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount be

determined at trial.

**New York Causes of Action**

**COUNT TWENTY-THREE**
**Violation of New York General Business Law § 349**
**(Brought by Mr. Cates and Mr. Doyle)**

361.    Plaintiffs incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

362.    New York General Business Law Section 349 declares unlawful "[d]exceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

363.    The conduct of Defendants alleged herein constitutes recurring unlawful deceptive acts and practices in violation of Gen. Bus. Law §349, and as such, Plaintiffs and the Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, marketing, and promoting the Vehicles.

364.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not break at all, the car can apply the brakes automatically."

365.    This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

366.    Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

CLASS ACTION COMPLAINT                    59

367.    Defendants willfully violated Gen. Bus. Law §349 by selling the Class Vehicles without disclosing the Front Assist Defect.

368.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs.

369.    In violation of Gen. Bus. Law §349, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

370.    Plaintiffs and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

371.    Had Plaintiffs known the truth about the vehicle, they would not have purchased the vehicles, or would not have paid as much.

372.    As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiffs and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT TWENTY-FOUR**
**Violation of New York General Business Law § 350**
**(Brought by Mr. Cates and Mr. Doyle)**

373.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

374.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

CLASS ACTION COMPLAINT                   60

375. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

376. Defendants' labeling and advertisements contain untrue and materially misleading statements concerning the safety of the Class Vehicles and the efficacy of the Front Assist system.

377. Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not break at all, the car can apply the brakes automatically."

378. Defendants represented, and continue to represent, that the Class Vehicles are safe, usable, and defect-free, which is untrue and misleading.

379. Plaintiffs and the Class Members have been injured inasmuch as they relied upon the Defendants' advertising and received less than what they bargained and/or paid for.

380. Defendants' advertising induced the Plaintiffs and Class a Members to buy the Class Vehicles.

381. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

382. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

383. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

384. As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiffs and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT TWENTY-FIVE
### Breach of Express Warranty Under New York Law
### (N.Y. U.C.C. Law §§ 2-313 and 2A-210)
### (Brought by Mr. Cates and Mr. Doyle)

385. Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

386. Defendants were at all times "merchants," "sellers," and "lessors" under N.Y. U.C.C. Law §§ 2-103(1)(d), 2-104(1) and 2A-103(1)(p).

387. Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

CLASS ACTION COMPLAINT                    62

388.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

389.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

390.    Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

391.    As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

392.    Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect.  Furthermore, Defendants have failed to repair the Defect.

393.    A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

394.    Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

395.    Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

396.    As a direct and proximate result of the breach, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

## COUNT TWENTY-SIX
### Breach of Implied Warranty of Merchantability Under New York Law
### (N.Y. U.C.C. Law §§ 2-314 and 2A-212)
### (Brought by Mr. Cates and Mr. Doyle)

397.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

398.    Defendants were at all times "merchants," "sellers," and "lessors" under N.Y. U.C.C. Law §§ 2-103(1)(d), 2-104(1) and 2A-103(1)(p).

399.    An implied warranty of merchantability arises under New York law under N.Y. U.C.C. Law §§ 2-314 and 2A-212.

400.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

401.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

402.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class Members have been damaged in an amount be determined at trial.

## North Carolina Causes of Action

### COUNT TWENTY-SEVEN
### Violation of North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. §§ 75-1.1 *et seq.*)
### (Brought by Ms. Norris-Barlow and Mr. Barlow)

403.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

404.    Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) by improperly describing the Class Vehicles as safe, usable, and defect-free. Plaintiff and the Class members paid for safe, usable, and defect-free automobiles but did not receive such products because the Class Vehicles contain the Front Assist Defect.

405.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision. If the driver does not brake at all, the car can apply the brakes automatically."

406.    This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

407.    Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

408.    Defendants intentionally and knowingly misrepresented the qualities of the Class Vehicles and knew or should have known that its conduct violated the NCUDTPA.

409.    Defendants owed Ms. Norris-Barlow and Mr. Barlow and similarly-situated consumers a duty to disclose all material facts concerning the Class Vehicles because it had

exclusive knowledge about the Front Assist system.

410.    Defendants' misrepresentations and omissions caused damages to Ms. Norris-Barlow and Mr. Barlow and similarly-situated consumers in an amount to be determined at trial.

411.    Ms. Norris-Barlow and Mr. Barlow also seek treble damages, injunctive relief, costs and attorneys' fees and any other proper relief under N.C. Gen. Stat. § 75-16.

**COUNT TWENTY-EIGHT**
**Breach of Express Warranty Under North Carolina Law**
**(N.C.G.S.A §§ 25-2-313 and 252A-210)**
**(Brought by Ms. Norris Barlow and Mr. Barlow)**

412.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

413.    Defendants were "merchants," "sellers," and "lessors" of the Products under N.C.G.S.A. §§ 25-2-103(1)(d), 25-2-104(1) and 25-2A-103(1)(p).

414.    Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

415.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

416.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited

Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

417.     Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

418.     As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

419.     Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect.  Furthermore, Defendants have failed to repair the Defect.

420.     A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

421.     Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

422.     Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

423.     As a direct and proximate result of the breach, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

## COUNT TWENTY-NINE
### Breach of Implied Warranty of Merchantability
### (N.C.G.S.A. §§ 25-2-314 and 252A-212)
### (Brought by Ms. Norris-Barlow and Mr. Barlow)

424.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

425.    Defendants were "merchants," "sellers," and "lessors" of the Products under N.C.G.S.A. §§ 25-2-103(1)(d), 25-2-104(1) and 25-2A-103(1)(p).

426.    An implied warranty of merchantability arises under North Carolina Law under N.C.G.S.A. §§ 25-2-314 and 252A-212.

427.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

428.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

429.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class Members have been damaged in an amount be determined at trial.

## COUNT THIRTY
### Unjust Enrichment Under North Carolina Law
### (Brought by Ms. Norris-Barlow and Mr. Barlow)

430.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

431. Ms. Norris-Barlow and Mr. Barlow and their fellow consumers enriched Defendants by buying the Class Vehicles. Such benefits were not conferred gratuitously, nor did Plaintiffs interfere in Defendants' business.

432. Defendants accepted and retained the benefit conferred by the purchases of Plaintiffs and similarly-situated consumers.

433. It would be unjust for Defendants to retain these benefits because Defendants obtained these benefits by misleading and deceiving Plaintiffs and consumers about the Front Assist system.

434. As a result of this unjust enrichment, Defendants should disgorge its benefits in an amount to be determined at trial.

<u>**Pennsylvania Causes of Action**</u>

**COUNT THIRTY-ONE**
**Violation of the Pennsylvania Unfair Trade Practices**
**and Consumer Protection Law (P.S. § 201(1) et seq.)**
**(Brought by Mr. Jones)**

435. Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

436. Defendants are engaged in "trade" and "commerce" within the meaning of 73 P.S. §201-3.

437. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania Law") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce..." 73 P.S. §201-3.

438. Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual

CLASS ACTION COMPLAINT                    69

warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision. If the driver does not brake at all, the car can apply the brakes automatically."

439. This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

440. Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

441. Defendants violated the Pennsylvania Law by improperly describing the Class Vehicles as safe, usable, and defect-free. Plaintiff and the Class members paid for safe, usable, and defect-free automobiles but did not receive such products because the Class Vehicles contain the Front Assist Defect.

442. Defendants intentionally and knowingly misrepresented the qualities of the Class Vehicles and knew or should have known that its conduct violated the Pennsylvania Law.

443. Defendants owed Mr. Jones and similarly-situated consumers a duty to disclose all material facts concerning the Class Vehicles because they had exclusive knowledge about the Front Assist system.

444. Defendants' misrepresentations and omissions caused damages to Mr. Jones and similarly-situated consumers in an amount to be determined at trial.

445. Mr. Jones and similarly-situated consumers seek an order enjoining Defendants'' unfair and deceptive trade practices, and all damages and relief available under the Pennsylvania Law.

## COUNT THIRTY-TWO
## Breach of Express Warranty Under Pennsylvania Law
## (13 Pa. Cons. Stat. §§ 2313 and 2A210)
## (Brought by Mr. Jones)

446.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

447.    Defendants are "merchants," "sellers," and "lessors" of the Class Vehicles under 13 Pa. Cons. Stat. §§ 2103(a), 2A103(a) and 2104.

448.    Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

449.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

450.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

451.    Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

452.    As a result of the Defendants' actions, Plaintiffs and Class members have suffered

economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

453.    Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect.   Furthermore, Defendants have failed to repair the Defect.

454.    A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

455.    Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

456.    Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

457.    As a direct and proximate result of the breach, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

**COUNT THIRTY-THREE**
**Breach of Implied Warranty of Merchantability Under Pennsylvania Law**
**(13 Pa. Cons. Stat. §§ 2314 and 2A212)**
**(Brought by Mr. Jones)**

458.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

459.    Defendants are "merchants," "sellers," and "lessors" of the Class Vehicles under

CLASS ACTION COMPLAINT                72

13 Pa. Cons. Stat. §§ 2103(a), 2A103(a) and 2104.

460.     An implied warranty of merchantability arises under Pennsylvania law under 13 Pa. Cons. Stat. §§ 2314 and 2A212.

461.     The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

462.     Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

463.     As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount be determined at trial.

**Utah Causes of Action**

**COUNT THIRTY-FOUR**
**Violation Of The Utah Consumer Sales Practices Act**
**Utah Code §§13-11-3 et seq.**
**(Brought by Mr. Pulver and Ms. Pulver)**

464.     Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

465.     Mr. and Ms. Pulver are "persons" who engaged in a "consumer transaction" under Utah Code §§13-11-3(2) and (5).

466.     Defendants are suppliers under § 13-11-3(6).

467.     Defendants have engaged in unfair competition or unfair or deceptive acts or

CLASS ACTION COMPLAINT                73

practices in violation of Utah Code Annotated § 13-11-1, et seq.  In particular, Utah law provides:

> (2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; . . .(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; . . . (j) . . . (ii) fails to honor a warranty or a particular warranty term . . . .
> Utah Code Ann. § 13-11-4.

468.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not break at all, the car can apply the brakes automatically."

469.    This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

470.    Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue.

471.    Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs.

472.    Accordingly, Defendants have violated (a), (b), (e) and (j)(2).

473.    Defendants willfully violated the Utah Consumer Sales Practices Act by selling the Class Vehicles without disclosing the Front Assist Defect.

474.    Plaintiffs and the Class suffered an ascertainable loss as a result of Defendants'

unlawful conduct as alleged herein.

475.    Had Plaintiffs known the truth about the vehicle, they would not have purchased the vehicle, or would not have paid as much.

476.    Plaintiffs seek damages, attorneys' fees and all other appropriate relief under the Utah Consumer Sales Practices Act.

**COUNT THIRTY-FIVE**
**Breach of Express Warranty Under Utah Law**
**(Brought by Mr. Pulver and Ms. Pulver)**

477.    Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

478.    Defendants were at all relevant times "merchants" and "sellers" of the Class Vehicles under Utah Code §§ 70A-2-104(1), 70A-2a-103(1)(t) and 70A-2-103(1)(d).

479.    Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

480.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

481.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited

Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

482. Defendants breached these warranties by selling to Plaintiffs and Class members the Class Vehicles with the known Front Assist Defect.

483. As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

484. Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect. Furthermore, Defendants have failed to repair the Defect.

485. A gross disparity in bargaining power existed between Volkswagen and Class members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

486. Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

487. Defendants were notified of their breach by Mr. Pulver, who contacted the dealer to inform the dealer of the problems Mr. and Ms. Pulver had experienced with the Front Assist feature. Defendants were also on notice of the Front Assist Defect because of numerous consumer complaints and communications by Class Members.

488. As a direct and proximate result of the breach, Plaintiffs and the Class Members

have been damaged in an amount to be determined at trial.

## COUNT THIRTY-SIX
### Breach of Implied Warranty of Merchantability Under Utah Law
### (Utah Code §§ 70A-2-314 and 70A-2A-212)
### (Brought by Mr. Pulver and Ms. Pulver)

489.    Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

490.    Under Utah law, a warranty of merchantability is implied in consumer transactions.

491.    The Class Vehicles were at all times "goods" under Utah law.

492.    Defendants were at all relevant time a "merchants" and "sellers" of the Class Vehicles under Utah law.

493.    he Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to function properly.

494.    Defendants were provided notice of these issues by Mr. Pulver, who contacted the dealer to inform the dealer of the problems Mr. and Ms. Pulver had experienced with the Front Assist feature, and by numerous informal and formal complaints filed against it, through online complaints and discussions and by complaints lodged with NHTSA.

495.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

CLASS ACTION COMPLAINT          77

## COUNT THIRTY-SEVEN
### Unjust Enrichment Under Utah Law
### (Brought by Mr. Pulver and Ms. Pulver)

496.     Plaintiffs incorporate by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

497.     Plaintiffs and the Class conferred a benefit on Defendants by purchasing the Class Vehicles.

498.     Defendants had knowledge that this benefit was conferred upon it.

499.     Because of their wrongful acts and omissions, Defendants charged a higher price for the Class Vehicles than the Class Vehicles' true value, and Defendants obtained money which rightfully belongs to Plaintiffs and the Class.

500.     Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

501.     Defendants' retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiffs and members of the Class would be unjust and inequitable.

502.     Plaintiffs are entitled to disgorgement of this benefit in an amount to be determined at trial.

### Kansas Causes of Action

## COUNT THIRTY-EIGHT
### Violation of Kansas Consumer Protection Act
### (Kan. Stat. Ann. § 50-623 et seq.))
### (Brought by Plaintiff Emily Dack)

503.      Plaintiff incorporates by reference the allegations of all forgoing paragraphs as if they had been set forth in full herein.

504.     Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

CLASS ACTION COMPLAINT                    78

505.    Ms. Dack and Kansas Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

506.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

507.    Defendants willfully violated the Kansas CPA by selling the Class Vehicles without disclosing the Front Assist Defect.

508.    Defendants stated that "Forward Collision Warning and Autonomous Emergency Braking (included in Front Assist) has a sensor in the front to help monitor traffic and can alert you to a potential collision. If the driver brakes too lightly in response to an audible and visual warning, Autonomous Emergency Braking (included in Front Assist) can increase braking pressure to help avoid or mitigate the impact of an impending collision.  If the driver does not break at all, the car can apply the brakes automatically."

509.    This statement is false and misleading because Defendants sold and leased the Class Vehicles without disclosing that the Front Assist feature does not work as stated.

CLASS ACTION COMPLAINT            79

510. Defendants also failed to disclose to consumers the existence of the Front Assist Defect, which they had an obligation to do because the Front Assist Defect is a safety issue. Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

511. In violation of the Kansas CPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Class Vehicles.

512. Plaintiff and the Class suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

513. Had Plaintiff known the truth about the vehicle, she would not have purchased the vehicle, or would not have paid as much.

514. Ms. Dack seeks damages, attorneys' fees and all other appropriate relief under the Kansas CPA.

**COUNT THIRTY-NINE**
**Breach of Express Warranty Under Kansas Law**
**(Kan. Stat. §§ 84-2-314 and 84-2A-210)**
**(Brought by Ms. Dack)**

515. Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

516. Defendants are "merchants," "sellers," and "lessors" under Kan. Stat. §§ 84-2-103(1)(d), 103(1)(p), 103(3) and 104(1).

517. Defendants expressly warranted that that the Front Assist feature "can help monitor traffic and can alert you acoustically and visually to a potential rear-end collision with the vehicle moving ahead. If it senses that a frontal collision is imminent, Autonomous Emergency Braking

CLASS ACTION COMPLAINT                    80

(included in Front Assist) can support the driver with increased brake pressure or, if the driver does not react at all, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and, under certain circumstances, can brake automatically to help mitigate the outcome of a collision with a pedestrian if the driver doesn't respond to the warnings."

518.    Defendants also expressly warranted that the Class Vehicles, including the Front Assist feature, were safe, high quality, and, at a minimum, would work properly.

519.    Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty periods ("NVLW") for a period of 6 years or 72,000 miles, whichever occurs first. This NVLW covers repairs or defects and is applicable to the Front Assist Defect.

520.    Defendants breached these warranties by selling to Plaintiff and Class members the Class Vehicles with the known Front Assist Defect.

521.    As a result of the Defendants' actions, Plaintiff and Class members have suffered economic damages including but not limited to loss of vehicle use while their vehicles are undergoing examination at repair facilities, substantial loss in value and resale value of the vehicles, and other related damage.

522.    Defendants' attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because it knowingly sold or leased Class Vehicles without informing consumers about the Front Assist Defect. Furthermore, Defendants have failed to repair the Defect.

523.    A gross disparity in bargaining power existed between Volkswagen and Class

members, and Volkswagen knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

524.    Plaintiff and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

525.    Defendants were notified of their breach by numerous consumer complaints and communications by Class Members.

526.    As a direct and proximate result of the breach, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## COUNT FORTY
### Breach of Implied Warranty of Merchantability Under Kansas Law
### (Kan. Stat. §§84-2-314 and 84-2A-212)
### (Brought by Ms. Dack)

527.    Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

528.    Defendants are "merchants," "sellers," and "lessors" under Kan. Stat. §§ 84-2-103(1)(d), 84-2-103(3), 84-2A-103(1)(p), and 84-2A-104(1).

529.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-314 and 84-2A-212.

530.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that their Front Assist feature engages for no reason, making them not of high quality, and causing them to pose dangerous conditions for the Class Vehicles' occupants and others on the roadway, and to fail prematurely and/or fail to

function properly.

531.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

532.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount be determined at trial.

## COUNT FORTY-ONE
### Unjust Enrichment Under Kansas Law
### (Brought by Ms. Dack)

533.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

534.    Plaintiff and the Class conferred a benefit on Defendants by purchasing the Class Vehicles.

535.    Defendants knew that the benefit of the purchases of the Class Vehicles was conferred upon them.

536.    Defendants accepted the benefit of the purchases of the Class Vehicles.

537.    Because of its wrongful acts and omissions, Defendants charged a higher price for the Class Vehicles than the Class Vehicles' true value, and Defendants obtained money which rightfully belongs to Plaintiff and the Class. Defendant's retention (without an offsetting return payment) of the benefit conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

538.    Plaintiff and the Class are entitled to disgorgement of this benefit in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect; and to correct their advertising and marketing practices as described herein;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 4, 2020.

Respectfully submitted,

_/s/ Tim Dollar_

Tim E. Dollar MO # 33123
**Dollar Burns & Becker, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
(T): (816) 876-2600
(F): (816) 221-8763
timd@dollar-law.com

Bonner C. Walsh
(_pro hac vice_ application forthcoming)
**Walsh PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Phone 541.359.2827
Facsimile 866.503 8206
bonner@walshpllc.com

Matthew D. Schelkopf
(_pro hac vice_ application forthcoming)
Joseph B. Kenney
(_pro hac vice_ application forthcoming)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: 610-421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com

Adam Gonnelli
(_pro hac vice_ application forthcoming)
**Law Office of Adam R. Gonnelli, L.L.C.**
7030 E. Genesee Street
Fayetteville, NY 13066
Phone: (917) 541-7110
Fax: (315) 446-7521
adam@arglawoffice.com
_Attorneys for Plaintiffs and the putative Class_