**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| EMILY DACK, et al., individually and on behalf of others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, a/k/a VOLKSWAGEN OF AMERICA, INC; and VOLKSWAGEN, AG, a/k/a VOLKSWAGEN GROUP, a foreign corporation,<br><br>  Defendants. | No. 4:20-cv-00615-RK |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 1

        A.      Plaintiffs' Pre-Litigation Investigation and History of the Litigation ......................... 1

                1.      The Dack Litigation ................................................................................ 2

                2.      The Sharma Litigation ............................................................................ 2

                3.      Discovery ............................................................................................... 3

        B.      Settlement Negotiations .......................................................................................... 3

        C.      Terms of the Settlement Agreement ........................................................................ 4

        D.      Notice to the Settlement Class ................................................................................ 5

        E.      The Preliminary Approval Order, Preliminary Class Certification, and the
                Response by Settlement Class Members ............................................................... 6

III.    ARGUMENT ...................................................................................................... 8

        A.      The Settlement is Fair, Reasonable, and Adequate .................................................. 8

                1.      Balancing the strength of Plaintiffs' case against the settlement terms .......... 9

                2.      The Defendant's financial condition ....................................................... 12

                3.      The complexity and expense of further litigation ..................................... 12

                4.      The amount of opposition to the settlement .............................................. 13

                5.      The agreement is not the product of fraud or collusion ............................ 13

        B.      The Notice Provided to the Class Satisfied Due Process ........................................ 14

        C.      The Eight Purported Objections Should be Overruled ........................................... 15

                1.      Nancy Diemert Anderson ...................................................................... 15

                2.      Brian R. Kearney and Gregory Francis Lungstrum. .................................. 18

                3.      Eve Burton ........................................................................................... 19

                4.      Jamie Jefferson and LeeAnn Boemer ...................................................... 21

                5.      Lavay Myles .......................................................................................... 22

                6.      Comment from Karen Riggins ............................................................... 23

IV.     CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997)............................................................................................ 8

*Armstrong v. Board of School Directors*,

    616 F.2d 305 (7th Cir. 1980) ........................................................................... 23

*Cullan & Cullan LLC v. M-Qube, Inc.*,

    No. 8:13CV172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016) ...................... 8

*Dennis v. Kellogg Co.*,

    697 F.3d 858 (9th Cir. 2012) ........................................................................... 23

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974).......................................................................................... 15

*Holmes v. Continental Can Co.*,

    706 F.2d 1144 (11th Cir.1983) ........................................................................ 21

*Huyer v. Wells Fargo & Co.*,

    314 F.R.D. 621 (S.D. Iowa 2016) .............................................................. 10, 12

*In re Ikon Office Solutions, Inc.*,

    194 F.R.D. 166 (E.D. Pa. 2000)....................................................................... 15

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,

    716 F.3d 1057 (8th Cir. 2013) ........................................................ 8, 9, 11, 12

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,

    396 F.3d 922 (8th Cir. 2005) ............................................................................. 8

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,

    MDL No.1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013)........................... 8

*Jones v. Casey's Gen. Stores, Inc.*,

    266 F.R.D. 222 (S.D. Iowa 2009) .............................................................. 11, 13

*Keil v. McCoy*,

862 F.3d 685 (8th Cir. 2017) ......................................................................... 23

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,*

    921 F.2d 1371 (8th Cir. 1990) ..................................................................... 8

*Marshall v. Nat'l Football League,*

    787 F.3d 502 (8th Cir. 2015) .................................................................. 9, 12

*Mullane v. Central Hanover Bank & Trust Co.,*

    339 U.S. 306 (1950) .................................................................................. 15

*Petrovic v. Amoco Oil Co.,*

    200 F.3d 1140 (8th Cir. 1999) ............................................................. 21, 23

*Pollard v. Remington Arms Co.,*

    320 F.R.D. 198 (W.D. Mo. 2017) ........................................................ 10, 13

*Rouse v. Language Line Servs.,*

    4:22-cv-0204-DGK (W.D. Mo. Nov. 1, 2023) ............................................ 23

*Schmidt v. Fuller Brush Co.,*

    527 F.2d 532 (8th Cir.1975) ....................................................................... 12

*Van Horn v. Trickey,*

    840 F.2d 604 (8th Cir. 1988) ....................................................................... 9

*Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ............................ 21

**Rules**

Fed. R. Civ. P. 23 ................................................................................... 7, 8, 15

## I. INTRODUCTION

Plaintiffs respectfully request that the Court issue an order (i) granting final approval to the Settlement set forth in the Settlement Agreement (the "SA"); (ii) certifying a class for settlement purposes only; and (iii) entering a final judgment dismissing the case with prejudice. Defendant does not oppose this requested relief. The SA was preliminarily approved on January 17, 2024, after having been negotiated at arms' length. As discussed below, the terms of the SA create substantial benefits for current and former purchasers and lessees of the Settlement Class Vehicles, are fair, reasonable, and adequate, and meet all of the requisite criteria under Fed. R. Civ. P. 23(e) for receiving final approval. Indeed, the overwhelmingly positive response by the Settlement Class Members confirms that granting final approval is warranted. As such, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for final approval of the settlement. A proposed order granting final approval will be submitted in advance of the final fairness hearing.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' Pre-Litigation Investigation and History of the Litigation

This class action lawsuit was commenced on August 4, 2020. (ECF No. 1.) It was filed after an extensive pre-suit investigation by Plaintiffs' counsel that began in approximately May 2019. This investigation included, *inter alia*, review of NHTSA documents, investigation and review of owner complaints to both NHTSA and other online forums, documents provided by class members, interviews with class members, and a technical analysis regarding the root cause of the alleged defect.

In addition to *Dack*, three similar putative class actions were filed in other courts throughout the country: *Sharma, et al. v. Volkswagen AG, et al.*, Case No. 4:20-cv-02394-JST (N.D. Cal.), *May, et al. v. Volkswagen Group of America, Inc., et al.*, Case No. 2:20-cv-09708

(MCA) (MAH) (D.N.J.), and *Pieras v. Volkswagen Group of America, Inc.*, Case No. 2:20-cv-18543-MCA-MAH (D.N.J.)(which was consolidated into *May)*. The Settlement resolves all of them.[1]

### 1.    The Dack Litigation

On November 16, 2020, Defendant Volkswagen Group of America, Inc. ("VWGoA") filed a motion to dismiss Plaintiffs' Complaint in the instant matter. (ECF No. 17.) Plaintiffs filed their opposition brief on December 18, 2020, (ECF No. 28), and Defendant filed its reply on January 18, 2021. (ECF No. 30.) On September 30, 2021, the Court issued an Order granting in part and denying in part Defendant's motion. (ECF No. 42.) The Court dismissed all claims by nonresident plaintiffs (Matthew Dorton, Larry Pike, Tony Carrillo, Chris Cates, Roger Doyle, Jacob Miller, Sarah Norris Barlow, Brandon Barlow, Chad Ritterbach, Johnathan Jones, Mark Pulver and Ashley Pulver)[2], as well as the breach of implied warranty claim under Missouri law and the breach of express warranty claims. (*Id.*)

### 2.    The Sharma Litigation

In the meantime, VWGoA filed a motion to dismiss on July 3, 2020, in the *Sharma* matter. (*Sharma* ECF Nos. 34 and 42.) The *Sharma* Plaintiffs filed an amended complaint on July 31, 2020 (*Sharma* ECF No. 47.) Defendants filed a motion to dismiss the first amended complaint on September 4, 2020. (*Sharma* ECF Nos. 54 and 59.) The *Sharma* court granted the motions with leave to amend on March 9, 2021. (*Sharma* ECF No. 80.) The *Sharma* Plaintiffs filed their Second Amended Complaint on April 8, 2021 (*Sharma* ECF No. 84.) Thereafter, on June 16, 2021, the *Sharma* Plaintiffs voluntarily dismissed defendants Robert Bosch GmbH and Robert Bosch LLC.

---

[1] *Pieras* was consolidated with *May*, and *Sharma* and *May* were subsequently voluntarily dismissed.
[2] The remaining Plaintiffs are Emily Dack and Kim Hensley-Hauser.

On June 4, 2021, Audi AG, Volkswagen AG and and VWGoA filed motions to dismiss the Second Amended Complaint. (*Sharma* ECF No. 99.) On January 21, 2022, the *Sharma* Court issued an order dismissing defendant Volkswagen AG. (*Sharma* ECF No. 119.) On April 4, 2022, Audi AG and VWGoA answered the Second Amended Complaint. (*Sharma* ECF Nos. 129 and 130.) On April 18, 2023, the *Sharma* Plaintiffs voluntarily dismissed their claims against the remaining defendants without prejudice. (*Sharma* ECF No. 146.)

On February 17, 2021, VWGoA moved to dismiss the consolidated complaint in *May*. (*May* ECF No. 32.). Before the Court decided that motion to dismiss, the matter was voluntarily discontinued on November 2, 2023 based on the instant settlement. (*May* ECF No. 63.)

### 3. Discovery

Discovery in the *Sharma* matter commenced in August of 2020, wherein VWGoA produced approximately 41,553 pages, which were reviewed by counsel. Around this time, the *Sharma* matter was also voluntarily dismissed, and both the *Sharma* and *May* matters' Plaintiffs were added as Plaintiffs in this action. In addition to the discovery listed above in *Sharma*, the *Dack* matter included additional written discovery as well as review of assembled materials regarding the AEB systems.[3] In *Dack* almost 29,000 pages of discovery were reviewed. As noted above, Plaintiffs' counsel also dissected and analyzed the AEB systems independently. In addition, Plaintiffs' counsel interviewed multiple non-party witnesses and responded to inquiries from putative class members.

### B. Settlement Negotiations

---

[3] The AEB system means the automatic emergency braking system. For Volkswagen Settlement Class Vehicles, AEB was/is a feature of, and/or included in, "Front Assist." For Audi Settlement Class Vehicles, AEB was/is a feature of, and/or included in, "Audi Braking Guard," "Pre Sense Front," "Audi Pre Sense City," and/or "Turn Assist," depending upon the year and model of the vehicle. (Settlement Agreement ¶I.K,fn. 1.)

From the outset of the litigation, as part of their duties under Fed. R. Civ. P. 26, Counsel for the parties in all four cases discussed the possibility of resolving this litigation. This eventually resulted in several meetings between counsel and extensive arms-length negotiations over a substantial period of time including participation in the Western District of Missouri's Mediation and Assessment Program before private mediator Bradley A. Winters, Esq. of JAMS on December 29, 2022, ultimately resulting in a class-wide settlement. The terms of this settlement have since been memorialized in the Settlement Agreement. All of the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides. Significantly, before the Settlement Agreement was executed, Plaintiffs' counsel received confirmatory discovery from Defendants to confirm that the proposed settlement class relief is fair, reasonable, and adequate.

### C. Terms of the Settlement Agreement

If finally approved, the settlement will provide the following substantial benefits to the following Settlement Class:

> All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I.X. of [the Settlement] Agreement, in the United States of America and Puerto Rico.[4]

The Settlement Class provides the following substantial benefits: (1) an extension of the New Vehicle Limited Warranty ("NVLW") by twelve (12) months or twelve thousand (12,000) miles, whichever comes first, from the expiration of the Settlement Class Vehicle's original

---

[4] A full list of Settlement Class Vehicles is set forth in Paragraph 3 of the Court's Order Granting Preliminary Approval of Class Action Settlement. (ECF No. 77). Class members can confirm whether their vehicles are included by checking their VINs on the VIN lookup portal on the settlement website.

4

NVLW, for 75% of the cost of a Covered Repair[5] by an authorized VW dealer (for VW Settlement Class Vehicles) or Audi dealer (for Audi Settlement Class Vehicles); (2) reimbursement for 75% of the cost of past paid Covered Repairs performed prior to the Notice Date and within twelve (12) months or twelve thousand (12,000) miles from the expiration of the Settlement Class Vehicle's NVLW period; and (3) additional information and education regarding the AEB system in Settlement Class vehicles. Additionally, if a Settlement Class Vehicle's NVLW has already expired as of the Notice Date, then the warranty will be extended for six (6) months after the Notice Date, subject to the same mileage limitation of 12,000 miles beyond the expiration of the original NVLW's mileage limitation.

The informational and educational materials to be provided to Settlement Class Members will be made available on the VW and Audi web pages and owner mobile apps, and will describe the functions and limitations of the various AEB systems installed in the VW and Audi Settlement Class Vehicles, including certain situations that can affect AEB functionality.

**D. Notice to the Settlement Class**

In accordance with the Preliminary Approval Order and Settlement Agreement, notice was disseminated to the Class as described below:

U.S. Mail: On May 15, 2024, The Claims Administrator mailed Class Notice together with the Claim Form via first class mail to the current or last known address of all reasonably identifiable Settlement Class Members. The Claims Administrator obtained the names and current or last known addresses of Settlement Class Members from Polk/IHS Markit based upon the VINs

---

[5] A Covered Repair is defined as "repair or replacement (parts and labor) of a diagnosed and confirmed malfunction or failure of a Settlement Class Vehicle's AEB system that resulted from failure or malfunction of the AEB system's control unit, camera(s), radar, LIDAR, and/or sensor(s) which enable automatic emergency braking functionality." (Settlement Agreement ¶I.K.)

of Settlement Class Vehicles that were provided by VWGoA.  Through this process, Class Notice was timely mailed to 4,975,300 identified Settlement Class Members.  See Declaration of Bonner C. Walsh, Ex. A (Decl. of Justin Stinehart).

Website: The Claims Administrator also implemented a Settlement website containing: (i) the instructions and deadlines for any objections, requests for exclusion, and submission of Claims for Reimbursement by mail, (ii) instructions on how to contact the Claims Administrator, Class Counsel, and Defense Counsel for assistance; (iii) a copy of the Claim Form, Class Notice, the Settlement Agreement, the Preliminary Approval Order, the motion for Final Approval, the Class Counsel Fee and Expenses Application, copies of pleadings,  and other pertinent orders and documents; and (iv) the deadlines for any objections, requests for exclusion, mailing of claims, and the date, time, and location of the final fairness hearing.  The Settlement website also includes answers to frequently asked questions and information on how to contact the Claim Administrator for more information and to ask questions.

### E. The Preliminary Approval Order, Preliminary Class Certification, and the Response by Settlement Class Members

The Court issued an order granting Preliminary Approval on January 17, 2024, which authorized the dissemination of notice to the class, and set a final approval hearing for July 17, 2024.  (ECF No. 77.)  Class members had until June 17, 2024 to mail requests for exclusion or to file any objections to the Settlement.  (*Id.* ¶ 20.)

In the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the Court analyzed each class certification element under Rule 23(a) and (b)(3) and concluded that the Settlement meets all of the criteria for preliminary approval and the Settlement Class should be certified for settlement purposes. (ECF No. 77, ¶ 7.) Nothing has changed since

the Court's January 17 Order to warrant that the Settlement not receive final approval. Class Counsel thus respectfully submits that the Court should reaffirm its certification of the Settlement Class and grant final approval of the settlement.

As this Court determined in granting preliminary approval, the Rule 23(a) requirements are clearly satisfied for settlement purposes. (ECF 77 ¶7.) There are approximately 3,328,395 Settlement Class Vehicles (Class Notices were mailed to 4,975,300 class members since many vehicles have had more than one owner), satisfying numerosity. Commonality is satisfied as there are common questions of law and fact, such as whether the Settlement Class Vehicles' AEB systems suffer from an alleged design defect and whether Defendant had a duty to and failed to disclose it to consumers. Typicality is satisfied because the claims of the Settlement Class arise out of the same alleged conduct related to the design, manufacture, and distribution of vehicles with the allegedly defective AEB systems.   Further, the named Plaintiffs are adequate representatives because they each purchased or leased a Settlement Class Vehicle subject to the Settlement Agreement and allegedly sustained damages based on the same alleged defect, and have no conflicts with the Settlement Class. Class Counsel are adequate as they have invested considerable time and resources into the prosecution of this action, they have a wealth of experience in litigating class actions, and they were able to negotiate an outstanding settlement for the Settlement Class.

Similarly, as the Court determined, the Rule 23(b)(3) requirements are also satisfied for settlement purposes. (ECF 77 ¶7.) The common questions of law and fact identified above predominate over any questions that may affect individual members of the Settlement Class, such as the amount of damages suffered by individual Settlement Class members. Further, the Settlement Class is "sufficiently cohesive" because the common questions are both subject to

7

generalized proof and common to all class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Superiority is satisfied as "the class action is the best available method for resolving the controversy." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *6 (D. Neb. Sept. 27, 2016). The Settlement Agreement provides members of the Settlement Class with prompt and substantial benefits without the significant risks and delays of further litigation and contains well-defined administrative procedures to ensure due process. The Settlement also would relieve the substantial judicial burdens that would be caused by duplicative litigation in thousands of individualized trials against Defendant.

## III. ARGUMENT

### A. The Settlement is Fair, Reasonable, and Adequate

In order to grant final approval to the proposed class action settlement, the Court must hold a hearing and find the settlement "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Additionally, the Eighth Circuit has held that the Court must "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) (citation omitted).

Preliminarily, settlements enjoy a presumption of fairness. *See*, *e.g.*, *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)) (settlement agreements are "presumptively valid"). "This is especially true because the settlement was reached through mediation with a third-party neutral, and only after substantial discovery had taken place." *See*, *e.g.*, *In re Zurn Pex Plumbing Prods. Liab. Litig.*, MDL No.1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). Class counsel, who are very

experienced in automotive class action matters, negotiated the settlement only after significant discovery began, and negotiated at arm's length with the assistance of Bradley A. Winters, Esq., an experienced neutral affiliated with the Western District of Missouri's Mediation and Assessment Program. As the Court determined in granting preliminary approval, the proceedings that occurred before entering the Settlement "afforded counsel the opportunity to adequately assess the claims and defenses in this Action, the positions, strengths, weaknesses, risks and benefits to each Party, and as such, to negotiate a Settlement Agreement that is fair, reasonable and adequate and reflects those considerations." (ECF 77 ¶8.)

There are four factors to guide the Court's inquiry into the fairness, reasonableness, and adequacy of the settlement: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) (citations omitted); *In re Uponor,* 716 F.3d at 163. "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (citation omitted). A district court, in evaluating the strength of the plaintiffs' case, "need not undertake the type of detailed investigation that trying the case would involve." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Marshall*, 787 F.3d at 518. Each factor will be analyzed below.

   1.    *Balancing the strength of Plaintiffs' case against the settlement terms*

In negotiating and reaching the Settlement Agreement, Class Counsel were aware of the difficulties, risks, and uncertainties associated with proving liability and damages. Defendant would certainly contested whether evidence acquired through documents and testimony showed pre-sale knowledge by Defendants of a common defect in the automatic emergency braking

technology, whether the limitations alleged by Plaintiffs regarding the automatic emergency braking technology constituted a defect, and whether Defendants' advertisements and promotion of the automatic emergency braking technology were false or misleading, and whether Plaintiffs and class members sustained any damages. In addition, Defendant has claimed numerous significant defenses to this action which could bar completely, if not substantially reduce, all or many Settlement Class Members' potential recoveries under the various applicable states' laws. These claimed defenses include statutes of limitation, lack of standing, lack of manifestation of the alleged issue, lack of privity with Defendants under the laws of various states, absence of a duty to disclose under applicable states' laws, absence of pre-sale knowledge of any alleged defect, lack of reliance or causation, "economic loss rule" bars to recovery, lack of recoverable damages and/or "ascertainable loss," and many other common law and statutory defenses or other bars to recovery applicable to particular Settlement Class Members' claims.

While Class Counsel believe they can present a strong liability case, the case was not without risks and any potential success of Plaintiffs' claims would be uncertain. To that end, in assessing the Settlement Agreement, the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery for a definitive Settlement Class against the risks of continued litigation. *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 219 (W.D. Mo. 2017) (finding "concrete benefits to potentially millions of individuals who would not be entitled to benefits absent this settlement" weighed in favor of approving settlement considering various litigation risks); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ("Wells Fargo had credible defenses that could be accepted by a fact-finder; Plaintiffs' ability to recover by proceeding to trial was not inevitable.

The settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial. Thus, this factor weighs strongly in favor of approving the settlement and finding it to be fair and reasonable.").

Furthermore, numerous individual factual and legal issues would likely predominate and adversely affect the ability to certify a class in the litigation context. These factors include the different conditions of each Settlement Class Vehicle; the manner in which each vehicle was driven and maintained; accidents, events, damage to the vehicle and environmental factors that may impact the operation of the AEB system; individual facts and circumstances of each Settlement Class Member's purchase or leasing of, and decision making concerning, his/her vehicle; what, if anything, each Settlement Class Member may have seen, heard or relied upon prior to purchase or lease; whether and to what extent any Settlement Class Member experienced any failure or malfunction of his/her Settlement Class Vehicle's AEB system; individual perceptions related to whether any application of the braking system was improper under the specific driving circumstances present when any Settlement Class Member experienced any such braking; whether and to what extent any Settlement Class Member can establish any entitlement to damages or other relief; and myriad other issues individual to each Settlement Class Member.

In sharp contrast to the risks and uncertainties of further litigation, the settlement provides the Settlement Class, now, with the precise and very substantial benefits including a warranty extension for the Class Vehicles, substantial reimbursement for past Covered Repairs performed prior to the Notice Date, and additional information and education regarding the AEB system in Settlement Class vehicles. *In re Uponor*, 716 F.3d at 1063 (observing the settlement terms we generous and offered the plaintiffs the "only conceivable remedies they could expect"); *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 230 (S.D. Iowa 2009) (approving settlement and

finding "the amount of compensation to be paid to each class member likely exceeds what any individual plaintiff might be able to recoup on his or her own").

In light of the risk associated with ultimately proving liability on a class-wide basis, this factor supports approval of the Settlement Agreement.

### 2. The Defendant's financial condition

Defendants' financial condition poses no threat to its ability to implement the terms of the settlement. As such, this factor is neutral. *Huyer*, 314 F.R.D. at 627 (citing *Marshall,* 787 F.3d at 512) (finding financial condition neutral where defendant was "financially able to pay the settlement amount, or continue with the litigation in the event the settlement is not approved").

### 3. The complexity and expense of further litigation

There is no question that "class actions place an enormous burden of costs and expense upon the parties." *In re Uponor*, 716 F.3d at 1063 (citing *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir.1975)). If this case were to proceed without settlement, numerous depositions and further protracted and expensive fact and expert discovery would need to occur, involving both Defendant and third parties, in order to litigate the very complex automotive, engineering and technology issues in this case. The parties would then need to prepare class certification briefing, expert reports, and file *Daubert* motions, and the Court would likely need to hold a class certification and *Daubert* hearing. In addition, one or both parties would likely move for summary judgment. Plaintiffs are confident that they could certify one or more classes, but also recognize that Defendant has numerous defenses to class certification and there is no guarantee that Plaintiffs could certify or maintain certification of any class, and either side would likely appeal any class certification decision to the Eighth Circuit. Eventually, the parties would proceed to a

lengthy trial, and then the post-trial appeal process would begin in earnest. Absent settlement, any potential resolution to the class would likely take multiple years.

### 4. The amount of opposition to the settlement

The deadline to object or opt-out of the class action has passed. Of the 4,975,300 Class Notices mailed, there have been only eight timely filed purported objections[6] and 921 timely filed opt-out requests received by the claims administrator.[7] *See* Declaration of Bonner C. Walsh at 5. Given the Class size, these objections and opt-outs together represent an approximate microscopic nearly two one-hundredths of one percent (.0187%) of the Class. "Either way you look at it, the amount of opposition to the settlement is miniscule." *Pollard*, 320 F.R.D. at 220; *Jones*, 266 F.R.D. at 230 (noting the absence of objections indicates "overwhelming support by class members" and "is strong circumstantial evidence supporting the fairness of the Settlement."). Here, the fact that there are an infinitesimal number of objections and opt-out requests demonstrates the strength of the settlement and that the Settlement Class overwhelmingly favors it.

### 5. The agreement is not the product of fraud or collusion

Last, as this Court has determined, the proposed settlement is not the result of any fraud or collusion between the parties, but was "reached as a result of intensive, arm's-length negotiations of vigorously disputed claims." (ECF 88 ¶9.) The Settlement Agreement provides

---

[6] The term "purported" is used here, as several of the claimed objections have procedural defects and should be overruled on that basis alone, or appear to be comments rather than objections. For a full discussion of objections and non-objection class member comments, see section III.C, below.

[7] Opt-outs have been transmitted to the Court, Plaintiff's Counsel, Defense Counsel, and the claims administrator. The parties are working to confirm a complete list of timely and proper requests, and will provide that to the Court with a Proposed Final Approval order prior to the Final Fairness hearing. For this memorandum, the "working number" includes all requests that have been received by the claims administrator, whether they comply with the requirements for a proper opt-out or not. This number will change as the opt-outs are fully reviewed in advance of the final fairness hearing.

13

substantial benefits to the Settlement Class. The settlement was negotiated at arms' length by counsel experienced in class action litigation. Moreover, Settlement negotiations were overseen in mediation by experienced neutral Bradley A. Winters, Esq. through the Western District of Missouri's Mediation and Assessment Program.

### B. The Notice Provided to the Class Satisfied Due Process

In accordance with the Court's Order preliminarily approving the Settlement, the Claims Administrator, Rust, followed the Notice Plan and mailed the Court-approved Class Notice of the proposed settlement by first class mail to the current or last known address of all reasonably identifiable Settlement Class Members on May 15, 2024. The Settlement website and toll-free telephone assistance line went live the same date. The Claims Administrator obtained the names and current or last known addresses of Settlement Class Vehicle owners and lessees from Polk/IHS Markit or an equivalent company (such as Experian) based upon the VINs of Settlement Class Vehicles provided by VWGoA. In addition, the Claims Administrator implemented a Settlement website containing: (i) details about the lawsuit, the Settlement, its benefits, and the Settlement Class Members' legal rights and options, including objecting or requesting to be excluded from the Settlement and/or not doing anything; (ii) instructions on how to submit a Claim for Reimbursement by mail, (iii) instructions on how to contact the Claims Administrator, Class Counsel, and Defense Counsel for assistance; (iv) copies of the Claim Form, Class Notice, Settlement Agreement, Preliminary Approval Order, Motion for Final Approval, Class Counsel Fee and Expenses Application, and other pertinent orders and documents; and (v) the deadlines for any objections, requests for exclusion, mailing of claims, and the date, time, and location of the final fairness hearing.

As the Court determined in granting Preliminary Approval, this Notice Plan unquestionably meets the due process requirements of Fed. R. Civ. P. 23 (ECF 77 ¶10), which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted). *See also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In this regard, potential Settlement Class Members have been (i) provided with direct notice of the Settlement Agreement including its substantial benefits, release of claims, and other terms; (ii) fully informed of their rights and obligations under the Settlement Agreement including the right to object to or opt out of the Settlement; and (iii) provided with the resources to ask questions and, to the extent necessary, receive assistance in submitting claim forms.

### C. The Eight Purported Objections Should be Overruled

Each purported objection and the lone class member comment are discussed in detail below. Plaintiffs' counsel will be prepared to address these objections at the Final Approval hearing on July 17, 2024. As discussed below, two of the objectors have withdrawn their objections after learning that they had based their objections upon incorrect information. However, Plaintiffs would note that none of the six (6) remaining objections should sway the Court into denying the valuable benefits afforded by the Class Settlement to the other 4.975 *million* class members.

1. *Nancy Diemert Anderson*

As a preliminary matter, Ms. Anderson's objection (ECF No. 91) fails to meet the requirements for objections set forth in the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 77, p. 7) and the Notice of Proposed Class Action Settlement (hereinafter "Notice") (ECF No. 73-1, p. 56), which Notice Ms. Anderson admits that she received (ECF No. 91, ¶3). Specifically, Ms. Anderson has failed to: (1) provide the complete VIN for her vehicle8, (2) provide proof that Ms. Anderson has owned or leased the Settlement Class Vehicle, (3) provide the name, address and telephone number of any counsel representing her, (4) state whether she intends to appear at the Final Fairness Hearing, and (5) list all other objections submitted by her or her counsel to any class action settlement within the past five years or state that there have been no such objections. Due to these deficiencies, counsel is unable to determine whether Ms. Anderson is a Class Member. On this basis alone, Ms. Anderson's objection should be overruled.

Turning to the merits of her objection, Ms. Anderson argues that Notice is deficient in two ways. She claims that she is unable to determine from the Notice "what is the basis for the lawsuit" (ECF No. 91, ¶4(d)), and that the class is inadequately defined (ECF No. 91, ¶11).

Regarding the basis of the lawsuit, Ms. Anderson claims that the Notice "fails to explain what the 'AEB systems' are" (*Id*. at ¶4(d).) However, "AEB" is defined as "automatic emergency braking" in the very first paragraph of the Notice, the basis for the claims are described on the first page of the Notice, and AEB systems are defined clearly in the Settlement Agreement. (ECF 73-1, p. 1, 9, 50) Despite her asserted inability to determine what the alleged defects in the AEB systems are, Ms. Anderson goes on to describe her experiences as "similar to the experiences of

---

[8] The purported VIN provided in Ms. Anderson's objection is 14 characters long, whereas a complete VIN is comprised of 17 characters.

the named Plaintiffs described in the Complaint in this action" (*Id*. at ¶ 5).[9] Ms. Anderson also cites to the Settlement Agreement in her objection, indicating that she found and read that as well. (*Id*. at ¶10.) Ms. Anderson's claims that the Notice fails to "identify what this lawsuit is all about" are thus dispelled, as she was able determine that she had similar experiences to those described in the Complaint based on information contained in or referenced by the Notice.

Ms. Anderson also claims that the Settlement Class is inadequately defined (ECF No. 91, ¶11.) However, she admits that she looked up the VIN of her vehicle and determined that it was a Settlement Class Vehicle (*Id*. at ¶4(c)), which would make her a Settlement Class Member (*see id*. at ¶4(a)). The Notice, together with the settlement website, therefore provide enough information for potential Settlement Class Members to determine whether they own a Settlement Class Vehicle.

The Court has already approved the form and content of the Notice and determined that the Notice Plan "satisfies Rule 23, due process, and constitutes the best notice practicable under the circumstances." (ECF 77 at ¶ 10.) Ms. Anderson's objections to the Notice should be overruled.

Ms. Anderson goes on to allege that her dealership has no knowledge of the settlement or the education program. (ECF 91 at ¶¶ 8-9.) While someone at the dealership may have told this to Ms. Anderson, it is not accurate. *See* Declaration of Bonner C. Walsh at 4.

Finally, Ms. Anderson's sole objection to the relief provided by the settlement is that the extended warranty only applies to "confirmed" AEB defects. (ECF No. 91 at ¶¶ 10, 14.) She complains that "confirmed" is not defined in the Class Notice or Settlement Agreement and argues that "Without a definition or discussion of the term 'confirmed,' there is no way to enforce this

---

[9] The web address of the settlement website, aebsettlement.com, is printed on every page of the Notice. Prominently linked on the settlement website are "Important Documents", including the Class Action Complaint and Settlement Agreement.

vital term." (*Id*. at ¶ 10.) Ms. Anderson's concern here is misplaced. "Confirmed" is not a term of art and, absent defining language in the Settlement Agreement, should be construed as to its ordinary meaning and usage. It is common sense that before a malfunction or failure can be addressed under an extended warranty (or any warranty at all for that matter), it must be confirmed to exist and be related to the warranted AEB system. The Settlement also makes it clear that the warranty extension repairs will be performed by authorized Audi or Volkswagen dealers, depending on the brand of the vehicle at issue. It is clear that the authorized dealer personnel will confirm the existence of an AEB failure or malfunction prior to completing any repair. This requirement for confirmation does not diminish the value of the extended warranty. Ms. Anderson's objection should thus be overruled on this point as well.

    2. *Brian R. Kearney and Gregory Francis Lungstrum.*

   Mr. Kearney objected to the settlement on the grounds that the extended warranty period may expire in the event that parts are unavailable for an extended period of time, denying Settlement Class Members access to warranted repairs. (ECF No. 92.) While this hypothetical concern is understandable, it is misplaced. If a vehicle is diagnosed to need a repair within the warranty extension period, the repair will be completed pursuant to the warranty even if some delay in parts availability results in the repair itself being completed outside of the extended warranty period. *See* Declaration of Bonner C. Walsh at 6.

   Similar to Mr. Kearney, Mr. Lungstrum objected to the settlement because he was told by an Audi dealership that the parts needed to fix his AEB system were "no longer being manufactured and/or available." (ECF No. 95 at ¶4.) Irrespective of the deficiencies of Mr.

Kearney's[10] and Mr. Lungstrum's[11] original objections, upon learning that the part in question is in fact available, both Mr. Lungstrum and Mr. Kearney have withdrawn their objections. (See Walsh Decl. Exs. B and C.)

        *3.*     *Eve Burton*

Ms. Burton's objection (ECF No. 96) is deficient in the following ways: (1) it fails to list the name, address, and telephone number of counsel representing the objector, if Ms. Burton is represented, and (2) it fails to state whether Ms. Burton has objected to any class action settlements within the last five years.

Ms. Burton's objection is based on several inaccuracies. First, she states that "[t]his does not appear to be an arms-length agreement, but instead feels like a self-interested deal." (*Id*. at 1.) However, Ms. Burton provides no basis for this statement. In contrast, the Court has preliminarily found that "the Settlement Agreement has been reached as a result of intensive, arm's-length negotiations of vigorously disputed claims, including through the use and assistance of an experienced third-party neutral mediator, and that the proposed Settlement is not the result of any collusion." (ECF No. 77 at 4.) Ms. Burton next alleges that "there is no evidence that discovery took place." (ECF 96 at 1.) Ms. Burton does not provide any support for this statement either. In

---

[10] Mr. Kearney's objection (ECF No. 92) is deficient in the following ways: (1) it fails to list the name, address, and telephone number of counsel representing the objector, if Mr. Kearney is represented, (2) it fails to state whether Mr. Kearney intends to appear at the Final Fairness hearing, and (3) it fails to state whether Mr. Kearney has objected to any class action settlements within the last five years.

[11] Mr. Lungstrum's objection (ECF No. 95) is deficient in the following ways: (1) it fails to include the objector's address[11] and telephone number, (2) it fails to list the name, address, and telephone number of counsel representing the objector, if Mr. Lungstrum is represented, (3) it fails to state whether Mr. Lungstrum intends to appear at the Final Fairness hearing, and (4) it fails to state whether Mr. Lungstrum has objected to any class action settlements within the last five years.

fact, over 70,000 pages of discovery were produced and reviewed in the combined cases. (*See* Plaintiff's Memorandum of Law in Support of Their Motion for Preliminary Approval of Class Action Settlement, ECF No. 72 at 7, 8 (stating that 41,553 pages were produced in *Sharma* and over 29,000 pages in *Dack*).) Again, the Court has preliminarily found that "[t]he proceedings that occurred before the Parties entered into the Settlement Agreement afforded counsel the opportunity to adequately assess the claims and defenses in the Action, the positions, strengths, weaknesses, risks, and benefits to each Party, and as such, to negotiate a Settlement Agreement that is fair, reasonable and adequate and reflects those considerations." (ECF No. 77 at 3.) Ms. Burton's unfounded opinion of the adequacy of discovery and negotiations does nothing to change the underlying facts which the Court recognized in granting Preliminary Approval of the settlement.

Ms. Burton also objects that the extended warranty only covers 75% of repairs. (ECF No. 96 at 2.) She states, "[i]f there was no settlement, if you had an issue with the AEB system, you could file a claim against Volkswagen and have all of your costs covered, as well as potentially other damages associated with potential fraud and willful conduct." This is not true, as a lawsuit filed for a malfunction occurring after the expiration of the New Vehicle Limited Warranty would require the class member to retain their own attorney and pay court costs and attorney fees, along with time consuming discovery, and there is no guarantee that such an action would be successful. The extended warranty provided by the settlement thus puts Class Members in a substantially better position than they would be in without the settlement, and Ms. Burton's decision to object instead of opt-out and retain her own attorney further demonstrates that the benefits offered by the settlement are superior to individual lawsuits.

Ms. Burton's final objection is that the settlement benefits are illusory for Class Members

who have purchased an extended warranty from a third party. This statement ignores the other benefits provided by the settlement, namely reimbursement for past repairs and the education program. Additionally, it is not a requirement of class action settlements that all Class Members benefit equally from the settlement. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (affirming lower court's approval of settlement where objectors argued the settlement led "to disproportionate results" among class members) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir.1983) ("there is no rule that settlements [must] benefit all class members equally"); *accord Yim v. Carey Limousine NY, Inc.*, 2016 WL 1389598, at *5 (E.D.N.Y. Apr. 7, 2016) ("a class need not provide the exact same settlement to every class member in order for a court to approve the settlement."). Ms. Burton's third-party extended warranty may render the extended warranty under the settlement less valuable to her in particular, but that does not make the settlement inherently unfair.

For these reasons, Ms. Burton's objection should be overruled.

### 4. *Jamie Jefferson and LeeAnn Boemer*

A letter was received from each of Jamie Jefferson and LeeAnn Boemer, that mention both opting out and objecting. For completeness, these letters are attached as Exhibits D (Jefferson) and E (Boemer) to the Declaration of Bonner C. Walsh. One cannot both opt out and object to a settlement, instead one or the other must be chosen.

> If an absent class member (or even a class representative) desires to affect the settlement by filing objections, then the objector must abide the result and be bound by the consequences. If the settlement is unpalatable, the class member may opt out and avoid the binding effect of the settlement judgment. To allow the class member to have it both ways, however, would countenance the practice of influencing litigation—or attempting to do so— in which the class member really has no stake. That result is unacceptable.

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 931 (E.D. Mich. 2007) (internal citation omitted).

Jefferson states her request for exclusion "unambiguously" and thus will not be addressed as an objection, though it is included in the section for completeness. *See* Declaration of Bonner C. Walsh, Exhibit D, p.2. Boemer is less clear, and class counsel has a request out to Boemer seeking clarification as to whether she intended to opt out or object. *See* Declaration of Bonner C. Walsh at 7. Even if these were considered objections, both are without merit. Ms. Boemer merely states that she believes the settlement is unfair because she thinks all Settlement Class Members should not have to pay for AEB repairs. Ms. Jefferson complains about her individual circumstance, in which no Volkswagen dealer has been able to diagnose any problem with her AEB system. Both of these objections should be overruled.

5.      *Lavay Myles*

A letter outlining the Objections of Lavay Myles was received by class counsel. It is attached as Exhibit F to the Declaration of Bonner C. Walsh. Ms. Myles' objection is deficient in the following ways: (1) it fails to list the name, address, and telephone number of counsel representing the objector, if Ms. Myles is represented, (2) it fails to state whether Ms. Myles intends to appear at the Final Fairness hearing, and (3) it fails to state whether Ms. Myles has objected to any class action settlements within the last five years; and (4) Ms. Myles failed to file the objection with the Court.

Ms. Myles brings up dealer concerns that are in line with those already addressed in the above objections so are not rehashed here. However, she also brings up two "objections" that are really proposed modifications of the settlement agreement. She would like to see the settlement expanded to cover all "possible future malfunctions related to this issue" with no limitation on time and wants to see all possible vehicle accidents covered if related to the AEB system. *See* Declaration of Bonner C. Walsh, Ex. F. While not the main focus of their objections, other

objectors sought additional relief as well. For example, Burton (ECF No. 96) wanted 100% of the repairs under the extended warranty covered, and Kearney (ECR No. 92) wanted to toll the warranty period for unavailable parts. However, none of these terms are a part of the settlement before the Court.

Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citing *Armstrong v. Board of School Directors*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on different grounds, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)). "A proposed settlement is not a buffet of individual provisions from which the Court can pick and choose." *Rouse v. Language Line Servs.*, 4:22-cv-0204-DGK, at *2 (W.D. Mo. Nov. 1, 2023) (citing *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (holding a "settlement must stand or fall in its entirety.")

For these reasons, Ms. Myles' objection should be overruled.

### 6.    *Comment from Karen Riggins*

Ms. Riggins has not objected to the settlement – and is not opposed to the settlement – but submitted a comment suggesting that the extended warranty be indefinite and cover 100% of repair expenses. (ECF No. 97)

The possibility that a hypothetical settlement could provide more relief is not a basis to reject a settlement that is fair, reasonable, and adequate, and that was achieved through adversarial litigation and arm's length negotiations. "As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Keil v. McCoy*, 862 F.3d 685, 696

(8th Cir. 2017) (internal citation omitted).

Accordingly, Plaintiffs requests that the Court overrule these objections and grant final approval to the Settlement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court certify the class for purposes of effectuating the settlement, approve the settlement as fair, reasonable and adequate, overrule the objections received, and dismiss this action with prejudice.

Dated: June 27, 2024                          Respectfully Submitted,


*/s/ Bonner C. Walsh*
Bonner C. Walsh
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
(T): (541) 359-2827
(F): (866) 503-8206
bonner@walshpllc.com

Tim E. Dollar  MO # 33123
**Dollar Burns & Becker, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
(T): (816) 876-2600
(F): (816) 221-8763
timd@dollar-law.com

Matthew D. Schelkopf
Joseph B. Kenney
**Sauder Schelkopf LLC**
555 Lancaster Ave.
Berwyn, PA 19312
(T): (610) 200-0581
(F): (610) 421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com

Adam R. Gonnelli
**LAW OFFICE OF ADAM R. GONNELLI LLC**
707 Alexander Road
Bldg. 2, Suite 208
Princeton, NJ, 08540
(T): (917) 541-7110
(F): (315) 446-7521
adam@arglawoffice.com

Russell D. Paul
Amey J. Park
Abigail J. Gertner
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
(T): (215) 875-3000
(F): (215) 875-4604
rpaul@bm.net
apark@bm.net
agertner@bm.net

Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby
**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
(T): (310) 556-4811
(F): (310) 943-0396
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelawyers.com
laura.goolsby@capstonelawyers.com

Alec Leslie
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas
New York, NY 10019
(T): (646) 837-7150
(F): (212) 989-9163
aleslie@bursor.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

Dated:  June 27, 2024                              _/s/  Bonner C. Walsh_____